GULF, MOBILE & OHIO RR. CO. *v.* HAWTHONE

No. 39705     September 26, 1955     82 So. 2d 454

(1)

*Welch & Gibbes,* Laurel, for appellant.

*Paul G. Swartzfager, Raymond Swartzfager,* Laurel, for appellee.

Hall, J.

Appellant's main line track in the City of Laurel runs in a northerly and southerly direction. Just east of the point where Central Avenue crosses the main line there are seven yard tracks, numbered from 1 to 7 inclusive, all of which are parallel with the main line. In the early morning of September 17, 1953, a local freight train came into Laurel upon the main line and stopped and separated the cars so as to open Central Avenue to traffic. At about 4:15 a.m., appellee approached this crossing while driving a school bus partially loaded with hands which he was about to transport to his farm to pick cotton for the day. While crossing yard track No. 4 his truck was struck by a switch engine traveling north and was pushed a distance of about twenty feet before the switch engine came to a complete stop. He brought this suit for damages to his truck and for damages for his personal injuries and for punitive damages and obtained a verdict for $12,000.00 from which this appeal is prosecuted.

It is contended that appellant was entitled to a directed verdict and that the verdict is against the overwhelming weight of the evidence. The plaintiff and six other witnesses testified that neither the whistle nor the bell on the switch engine was sounded as the engine approached the crossing. Five members of the engine crew testified that the bell was ringing continuously and that the whistle was sounded four blasts. They were corroborated by a disinterested witness. The plaintiff and his six witnesses testified also that the flagman, who was standing on the main line, but not in a position to see

the switch engine approaching, signalled the plaintiff to cross the tracks. The flagman denied this and maintained that he tried to stop the plaintiff. Thus there was squarely presented an issue of fact for decision by a jury and the trial court committed no error in refusing the peremptory instruction or in holding that the verdict was not against the overwhelming weight of the evidence.

It is next contended that the trial court erred in allowing the question of punitive damages to be considered by the jury. If no negligence had been shown except the failure to give the statutory crossing signal by whistle or bell, this point would be well taken, but we have the additional evidence that the flagman at the crossing signalled the plaintiff to proceed at a time when he was at a place where he could not see the position of the switch engine and yet knowing that it was due to return from the south end of the yard. We think it was for the jury to say whether the flagman's alleged act was so wanton and gross and in such reckless disregard of the safety of others as to be tantamount to wilfulness.

It is finally contended that the verdict in this case is so large as to evince passion and prejudice on the part of the jury. The damages to the truck were established by the proof to be $900.00. This leaves $11,100.00 for personal injuries and punitive damages. Verdicts for personal injuries must be supported by some substantial and satisfactory proof. Plaintiff received a little cut on his finger which was closed by an employee of the railroad with a band-aid. He was not thrown from the truck and was able to back it up and get it off the tracks and out of the street. He got his brother-in-law to carry him home where he got his automobile and rounded up the school children on his route so as to get them to school on time. Then he got an automobile mechanic to go with him a distance of several miles back to the scene of the wreck and bring in and appraise the damage to the truck. He then went home and saw after getting the school children back to their homes. The

following day he saw after getting the children to and from school by automobile. Then he arranged for another school bus to transport them. He was a very busy and active man and did not one time stop to see about his alleged injuries. He did not even see a doctor until September 19th, who only told him to rub his back with liniment or rubbing alcohol. He went to this doctor three times, but did not bring him to court to testify. The following February or March he saw another doctor who in the weeks that followed saw him three times and prescribed some internal medicine. This doctor sent plaintiff to a clinic to have X-ray pictures made of his back and ribs and these pictures showed no abnormality. Plaintiff never even visited a hospital and does not claim that he ever spent even one extra hour in bed on account of his injuries. It was a week or two before he even mentioned to his wife that he had an injury. The last doctor he saw testified but did not say that plaintiff had any serious injury. About the most he would say was that the muscles in plaintiff's back were sprained, but he did not say that this sprain would probably be permanent. Plaintiff lost no time from his work. He hired a man to supervise the gathering of his cotton crop. He went to teaching school and was apparently able to discharge his duties regularly and without interruption. According to the record we are dealing with a case where the injuries were slight and of a minor nature. Plainly the largest part of the verdict is for punitive damages, and, while the fixing of the amount of such damages is largely in the discretion of the jury, we do not think that our cases so holding have ever been intended to turn the jury loose without a bridle. ▇▇ We have carefully considered the entire record in this case and have reached the conclusion that $6,000.00 would liberally compensate plaintiff for his personal injuries and property damage and award him also a liberal amount as punitive damages. If the plaintiff will enter a remittitur of $6,000.00 the

judgment will be affirmed, otherwise it will be reversed and remanded for a new trial.

Affirmed with remittitur.

*McGehee, C. J.*, and *Lee, Kyle* and *Holmes, JJ.*, concur.