393 So.2d 467 (1981)
The COMMODORE CORPORATION
v.
Foster BAILEY and Bobbie Bailey.
No. 52306.
Supreme Court of Mississippi.
January 7, 1981.
Rehearing Denied February 18, 1981.
H.M. Yoste, Jr., Ramsey, Bodron, Thames & Robinson, Vicksburg, Anthony L. Phillips, Jackson, for appellant.
David M. Sessums, Varner & Parker, Vicksburg, for appellees.
Before ROBERTSON, P.J., and LEE and BOWLING, JJ.
BOWLING, Justice, for the Court:
This case involves a suit for actual and punitive damages allegedly sustained by appellees, Foster Bailey and Bobbie Bailey, due to the alleged negligence of appellant, The Commodore Corporation. The original declaration in the Circuit Court of Warren County included, in addition to The Commodore Corporation as defendant, S.M. Smith d/b/a Beechwood Mobile Housing. At the conclusion of appellee's proof, the trial court sustained Smith's motion for a directed verdict, leaving as the sole defendant The Commodore Corporation. The basis of the suit was that appellant was negligent in making repairs to a new trailer home purchased by appellees and manufactured by appellant. The jury returned a verdict for appellees in the amount of $6,000 as actual damages and $10,000 as punitive damages. Appellant assigns as errors the following:
1. The trial court erred in granting plaintiffs a peremptory instruction on negligence.
2. The trial court erred in granting plaintiffs an instruction on punitive damages.
3. The award of punitive damages was against the overwhelming weight of the evidence.

*469 4. The award of actual damages was against the overwhelming weight of the evidence.
5. The jury's verdict was so excessive as to evince bias, passion and prejudice.
It is necessary to discuss the evidence. Foster Bailey and Bobbie Bailey, man and wife, moved from Canton, Mississippi, to Vicksburg during the first part of 1978, as Mr. Bailey had a job at Grand Gulf south of Vicksburg. Living accommodations were hard to find so they purchased a trailer home from Beechwood Mobile Housing of Vicksburg, a retail dealer in such homes. The trailer was manufactured by appellant, The Commodore Corporation of Haleyville, Alabama, and it was admitted that the manufacturer was obligated to repair any defects in the trailer for a period of at least one year. The trailer was purchased in May, 1978, and set up in a trailer park in Vicksburg. It was a rather large trailer, having a living room, two bedrooms, a dining room, a kitchen, a hallway, one and one-half baths, and a utility room with outlets for such as a washer, etc.
During the latter part of July, 1978, the Baileys noticed a "hump" that had developed in the bathroom floor immediately in front of the commode. The office of Beechwood was notified, and they in turn notified appellant manufacturer. On August 3, 1978, two young men, known only as Carl and Bobby, came to the trailer home, stating that they represented the appellant and were there for the purpose of repairing the bathroom floor. According to Mr. and Mrs. Bailey, these repairmen completely removed the commode and its connections and made repairs to the floor, stating that the "hump" was caused from a leak around the bottom of the commode. The commode was replaced in its position and the water pipe connection from the main water line to the commode was attached. Carl and Bobby assured the Baileys that the repairs were satisfactory.
During the night of August 5, 1978, it became necessary for Mrs. Bailey to make a trip to the bathroom. Upon placing her feet on the floor, she found it to be covered with several inches of water. She called to her husband and they found water shooting to the ceiling in the bathroom from the main water line that had been attached to the commode two days earlier by Carl and Bobby. The trailer was flooded with water. Mr. Bailey awakened a plumber [Mr. Pettway] who lived nearby and he examined the appliances around the commode to ascertain the trouble. He testified at trial and his testimony will be discussed later.
The morning after the flooding incident was Sunday. The Baileys went to the Beechwood place of business and attempted to get assistance. Mrs. Bailey also called The Commodore Corporation that morning. Mrs. Bailey was introduced as the first witness by appellees. She described in detail the soaking of the carpet and the walls and personal property situated in the trailer. She testified that she and her husband made very effort to get as much water from the trailer as possible and salvage as much damaged property as possible. She testified that about a week after the flooding, Carl and Bobby again came from Alabama to the trailer home. During the course of the conversation, the man named Carl stated, "Well, I have seen a lot worse than this." Mrs. Bailey testified that upon requesting advice as to what to do about the damaged personal property, Carl stated, "You can burn it if you want to," and that if the Baileys sued Commodore they would have "to wait in line." Carl and Bobby then left, telling Mrs. Bailey that they would be back in two to four weeks as they had to go to Texas. They did no work pertaining to the flooded trailer on that trip. During the early part of October, Carl and Bobby came back to Vicksburg and stayed four or five days performing certain repair work to the trailer, such as replacing parts of the flooring. All of the furniture and bathroom equipment was carried out into the yard.
Mrs. Bailey testified in detail regarding the extreme inconvenience they had experienced since the flood of August 5th and their effort to live in the situation that had been created. Mrs. Bailey testified that *470 when Carl and Bobby finished with the repairs, they only moved one bed back into the trailer and it was necessary for Mr. Bailey and her grandchildren to move everything else.
Photographs were introduced in evidence by Mrs. Bailey showing damage to the carpet and other parts of the trailer, including a hole in the floor where the bedpost had gone through it long after the repairs related above were made. She described the odor that existed in the trailer from the time of the flood to the date of the trial. She testified about the manner in which some of the carpet was replaced by Carl and Bobby. Pictures were introduced showing mismatched carpeting with its pattern going in one direction for a distance and then in another direction. A photograph was introduced of a wall showing that paneling had been placed in the trailer that was much lighter in color than the old paneling that was still in place. This light colored paneling was not installed until January, 1979. Mrs. Bailey further testified in detail about damage that still existed at the time of the trial on January 16, 1980, which included the hole in the bedroom floor, the different colored paneling, and the fact that the carpet had not been correctly reinstalled as promised. She described the difficulty she was still having with the electrical system in the trailer, which had persisted since the night of the flood.
Appellee, Foster Bailey, testified and his testimony was essentially the same as that of his wife. He reiterated the manner in which the carpet was mislaid and described in more detail the general "mess" that existed during the times that appellant's representatives were at the trailer site after the flood. He described the hole in the bedroom through which a leg of the bed had protruded. He testified regarding the odor that still existed in the trailer at the time of the trial. There was still a leak around the bathtub at the time of the trial, which Mr. Bailey had attempted to repair. He again described the different colored paneling that was placed adjacent to the old paneling on parts of the damaged wall.
Appellees presented testimony from witness Jessie Pettway, the plumber who lived near the Bailey trailer and came to the scene immediately after the flood was discovered. He related being called by Mr. Bailey during the early morning hours. He found that the water had come from the supply line at the back of the commode. He described in detail the procedure necessary to connect this supply line to the commode. He testified that it was necessary to place a rubber compression washer on the commode connection and then to screw a "tap nut" onto the connection. He found that this "tap nut" had not been tightened sufficiently and that in the two days' time since Carl and Bobby worked, it had worked completely loose, allowing the supply line to become disconnected and water to escape freely. He stated that he had been able to manipulate the loose nut with his fingers. In his opinion, the nut should have been tightened with pliers and a new seal placed on the connection where the tap nut was to be attached. Pettway stated that he found that the repairmen had placed an old seal at the connection. He stated that a pair of channel lock pliers should have been used to tighten the nut onto a new seal and if this had been done properly the connection would not have come loose, allowing the water to run freely from the main pipe. Pettway reconnected the pipe to the commode in the proper manner. In his opinion, the connection had been done improperly by appellant's employees.
One of the appellant's witnesses at the trial was Larry Mann, a sales representative. He was called as an adverse witness by appellees. He testified that during the month of August, the exact date he did not remember, he was called by Mr. Melton of Beechwood Housing and informed about the flooded trailer. He stated that he had a work order showing that repair work on the trailer had been completed on September 22. Mr. Mann did not know the identity of the two young men who came to Vicksburg except that their first names were Carl and Bobby. He did not know their location at the time of trial and they were not present to testify. He stated that his company had *471 no record of the initial work done on the commode by Carl and Bobby. He maintained that the first notice he had was in early September when he was contacted by appellees' attorney. Mann had no record of the hereinbefore described visit to the trailer by Carl and Bobby after the flood when no repair work at all was done and the men had said they were on their way to Texas. According to Mann, the company records showed that although a call from Beechwood was received on the morning the flood occurred, no one from appellant company reported to the Bailey's trailer home until September 13th, approximately five weeks after the flood.
Mr. Mann denied that he had ever received a letter in December from appellees' attorney advising that the repair work had not been completed and making a request that this be done. A copy of that letter, however, was allowed into evidence. At one point, it was necessary for the trial court to admonish the witness to be sure of his sworn testimony. This was done in chambers.
Mann admitted that he was contacted in early January concerning unfinished repairs, and, in response, sent Mr. Al Fletcher, a representative of appellant, to Vicksburg to do some additional work on the damage that had occurred in the flood of August 5. It was at this time that the different colored paneling was installed and as shown in the above mentioned photographs, was very unsightly.
Did the lower court err in granting a peremptory instruction on the question of negligence and the right to recover actual damages?
From the foregoing discussion of the testimony, it can readily be seen that there was no dispute as to appellant's negligence. The entire matter was started by appellant's agents, Carl and Bobby, who performed the initial repair work in a negligent manner. Neither Carl nor Bobby, whomever they are or wherever they be, testified, and the testimony of witness Pettway was undisputed. It is clear, therefore, that the lower court was correct in granting appellees' peremptory instruction on the question of negligence and actual damages. As to the amount of the award in the sum of $6,000 for actual damages, there was ample proof of actual loss in the sum of $5,514.03. In addition to this, there was ample proof of much mental anguish, discomfort, inconvenience and hardship sustained by the Baileys as the result of appellant's negligence. The peremptory instruction on this issue was proper.
Was the trial court correct in granting appellees' instruction permitting the jury to award punitive damages?
This Court, in many cases, has set out the principles and requirements necessary to permit the jury in its discretion to award punitive damages in addition to actual damages. If the evidence presented by the party requesting a punitive damage instruction is such that the jury could find that the wrongful acts complained of resulted from such gross disregard of the rights of the complaining party as amounts to wilfulness on the part of the wrongdoer, or that the opposite party was guilty of such gross negligence as to amount to a reckless disregard of the complaining party's rights, then the court is fully authorized to submit the issue of punitive damages for the jury's deliberation. Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962); Greyhound Corp. v. Townsend, 234 Miss. 839, 108 So.2d 208 (1959); Belk v. Rosamond, 213 Miss. 633, 57 So.2d 461 (1952); Teche Lines v. Pope, 175 Miss. 393, 166 So. 539 (1936); McDonald v. Moore, 159 Miss. 326, 131 So. 824 (1931); Bounds v. Watts, 159 Miss. 307, 131 So. 804 (1931); Yazoo & M.V.R. Co. v. Mullen, 158 Miss. 774, 131 So. 101 (1930); Illinois Cent. R. Co. v. Dodds, 97 Miss. 865, 53 So. 409 (1910); New Orleans, J. & G.N.R. Co. v. Statham, 42 Miss. 607, 97 Am.Dec. 478 (1869); Atkinson v. Dixie Greyhound Lines, 143 F.2d 477, cert. den. 323 U.S. 758, 65 S.Ct. 92, 89 L.Ed. 607 (1944).
We have held that in the event the jury awards punitive damages, the amount is solely within the jury's discretion unless *472 arbitrary or unreasonable. The amount cannot be determined by any fixed rule. Travelers Indemnity Co. v. Davis Wholesale Drug Co., 234 So.2d 604 (Miss. 1970); Kinnard v. Martin, 223 So.2d 300 (Miss. 1969). Therefore, we hold that the award of punitive damages was not against the overwhelming weight of the evidence and we cannot say that the jury has abused its discretion and awarded an excessive amount under the evidence presented in this particular case.
It follows, therefore, that the cause should be affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.