528 So.2d 1112 (1988)
INDEPENDENT LIFE & ACCIDENT INSURANCE COMPANY, et al.
v.
George R. PEAVY.
No. 56043.
Supreme Court of Mississippi.
May 4, 1988.
Rehearing Denied August 17, 1988.
*1113 Thomas H. Suttle, Jr., Daniel, Coker, Horton & Bell, Jackson, for appellants.
J. Hal Ross, Brandon, Ronald S. Cochran, Denton, Persons, Dornan & Bilbo, Biloxi, for appellee.
EN BANC.
DAN M. LEE, Presiding Justice, for the Court:
George R. Peavy filed suit in the Circuit Court of Rankin County, Mississippi, against Independent Life & Accident Insurance Company, and against its agents George F. Watson and John Lowell Davis, for tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. After the two individual defendants were dismissed on Peavy's motion, the jury returned a verdict against Independent Life and awarded Peavy $412.20 in actual damages and $250,000.00 in punitive damages. From that verdict Independent Life has appealed, assigning four errors. We affirm.
On March 16, 1968, Independent Life & Accident Insurance Company (Independent Life) issued a $10,000.00 life insurance policy covering George Randell Peavy. The provisions of the policy included waiver of premium in case of disability, and double indemnity in case of accidental death.
Approximately eleven years later, while the policy was in effect, Peavy was injured while working for Pearl Steel Erectors. The injury occurred when a 3,500-pound steel beam fell on Peavy's leg, resulting in a lengthy period (26 months) of total disability. Medical testimony indicated that Peavy's total disability ended February 1, 1982, after which he was partially disabled for an unspecified time. This date at which total disability ended is a key factor, because the waiver of premium provision required that the insured, in order to obtain the benefit, notify the company in writing of his disability during the period of total disability. The provision reads as follows:
NOTICE OF CLAIM. No claim for benefits hereunder shall be valid unless total disability is established as provided elsewhere herein and written notice thereof *1114 is given to and received by the Company during the lifetime of the Insured and during the continuance of total disability. Failure to give such notice within such time shall not invalidate any claim if it shall be shown that it was not reasonably possible to give it within such time and that such notice was given as soon as was reasonably possible. If such disability commenced within the grace period for payment of a premium in default, the Insured shall be liable to the Company for such premium with interest at 6% a year, compounded annually, which amount; if not paid shall be deducted from any amount payable under the Policy.
The waiver of premium provision also contains the following definition of total disability:
TOTAL DISABILITY DEFINED. Total disability as used herein is defined as:
1. Incapacity to engage in any occupation for remuneration or profit, which incapacity is the result of bodily injury or disease suffered or contracted after the date of this disability provision; or
2. The loss by severance of both hands at or above the wrist, of both feet at or above the ankle, or of one hand and one foot at or above the wrist and ankle respectively; or
3. The permanent loss of sight of both eyes.
In the summer of 1980, Peavy told his insurance agent, George Watson, that he wanted to file a claim for waiver of premium because of his disability. Watson provided a form, which Peavy completed and returned to Watson, who then submitted it to Independent Life. Subsequently, Independent Life returned the form to Watson, indicating that it was the wrong form and enclosing the correct form. Watson left the correct form with Peavy, who completed it, or partially completed it. Shortly thereafter, Watson and his manager John Lowell Davis visited Peavy at the latter's residence. According to the testimony of Peavy and his wife, Watson and Davis, during that visit, persuaded them not to file for the waiver of premium at that time. They informed Peavy that by filing for the waiver of premium, he would forfeit the double indemnity provision of his policy. (The policy expressly provides for this forfeiture.) Furthermore, Watson or Lowell or both told Peavy that if, at any time, he felt he could not pay the premiums, then he need only submit the claim form, and the company would begin paying the premium and would reimburse him for premiums he had paid since the time he became disabled. At trial Watson and Lowell denied telling Peavy he could wait to submit the claim.
In April of 1982, Peavy, feeling that he was no longer financially able to pay the premium, submitted a claim. Again, Independent Life returned the claim, indicating it was not submitted on the correct form. Then Peavy completed and submitted the correct form, dated May 28, 1982. Because Peavy did not submit the claim during the period of total disability, Independent Life denied the claim. Oddly enough, this correct-but-submitted-too-late form is identical to the submitted-on-time-but-incorrect form which Peavy had first completed and forwarded to Independent Life. Watson told Peavy that the claim had been denied and that he would "do what he could to help," but there is no evidence of any further action by him on Peavy's behalf. Peavy then retained an attorney who, after initial correspondence proved unfruitful, filed suit against Independent Life, Watson and Davis.
At trial Peavy put on evidence, over defense counsel's objections, of other allegedly wrongful acts by Independent Life, and the trial court allowed Peavy to amend his pleadings to conform to this proof. These alleged actions on the part of Independent Life included the following: 1) using, in the policy, a definition of total disability which Peavy argues is contrary to Mississippi law, 2) requiring Peavy to choose between waiver of premium and double indemnity, and 3) billing Peavy for a lapsed premium instead of allowing the automatic premium loan to take effect. The trial court's action in allowing the proof *1115 and the amendment of the pleadings is one of the assigned errors.
Peavy's motion to dismiss the two individual defendants was granted, and the jury returned a verdict for Peavy against Independent Life. Peavy was awarded $412.00 in actual damages and $250,000.00 in punitive damages. Independent Life has appealed, assigning four (4) errors.

I. DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER THE QUESTION OF PUNITIVE DAMAGES AND IN NOT REMITTING ALL OF THE PUNITIVE DAMAGES ON INDEPENDENT LIFE'S POST-TRIAL MOTION?
Punitive damages are assessed as an example and warning to others, and are to be allowed with caution, Consolidated American Life v. Toche, 410 So.2d 1303, 1304 (Miss. 1982), and only in extreme cases, Gardner v. Jones, 464 So.2d 1144, 1148 (Miss. 1985). In an action for breach of contract, punitive damages are appropriate only where the breach is "attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort." Fedders Corp. v. Boat-right, 493 So.2d 301, 311 (Miss. 1986), quoting Progressive Casualty Insurance Co. v. Keys, 317 So.2d 396, 398 (Miss. 1975).
When an insurance company is sued for refusing to pay a claim, the existence of an arguable reason for that refusal renders inappropriate any assessment of punitive damages. State Farm Fire and Cas. Co. v. Simpson, 477 So.2d 242 (Miss. 1985); Progressive Casualty Insurance Co. v. Keys, 317 So.2d 396 (Miss. 1975). The absence of an arguable reason does not, however, mandate the assessment of punitive damages. Only when the insurer acted with malice or gross negligence or reckless disregard for the insured's rights is the imposition of punitive damages appropriate. Aetna Cas. & Sur. Co. v. Day, 487 So.2d 830 (Miss. 1986).
Technically, Independent Life had an arguable reason for refusing to waive Peavy's premium: he had not filed written notice of disability, on the proper form, during the time he was totally disabled. Because notice within that time was expressly required by the policy, Independent Life's duty to waive the premium never arose.
The conduct on the part of Independent Life which warranted the assessment of punitive damages was not the actual denial of the claim, but the course of conduct through which Independent Life caused Peavy not to file the required notice. Although the testimony is conflicting, there is evidence that Watson and Davis persuaded Peavy not to file the notice by making two representations, one accurate and the other inaccurate. First, they told Peavy that by filing for waiver of premium he would forfeit double indemnity. This statement was an accurate explanation of the policy provisions. Second, they told Peavy that if, in the future, he was unable to pay the premium, he need only submit the form and Independent Life would begin paying the premium and would reimburse him in a lump sum for the premiums he had paid during the period of his disability. Peavy's testimony, and that of his wife, indicated that they were told he could file "at any time" or "any time before he came out from under the doctor's care." This testimony is corroborated by a memo from Watson to the company stating that Peavy did not want to lose his double indemnity and would "inform the company later of his decision." Peavy gave notice, although on the wrong form, within three (3) months after the end of a twenty-six (26) month period of total disability. At the time he filed, he was still partially disabled and was still under a physician's care.
If, as the jury apparently believed, Watson and Davis indeed made these statements to Peavy, then these misrepresentations lulled Peavy into believing his benefits would remain available. By thus "sandbagging" Peavy, Watson and Davis effectively manufactured the arguable reason which Independent Life would later use to deny Peavy's claim. An insurer may be held liable for actual and punitive damages based on its agent's actions. In National Life and Acc. Ins. Co. v. Miller, *1116 484 So.2d 329 (Miss. 1985), the insurer denied a claim because the policy application form failed to reveal the insured's heart murmur. That omission was the responsibility of the soliciting agent, who, in completing the application, failed to note the heart murmur, even though the applicant disclosed it to him. Such action was imputable to the insurer and warranted submission of the issue of punitive damages to the jury. Miller, 484 So.2d at 336. In the case at bar the misrepresentations constituted either an intentional wrong or such gross negligence as to evidence reckless disregard for Peavy's rights. In either case, this conduct on the part of the company's agents warranted the imposition of punitive damages against Independent Life.

II. DID THE COURT ERR IN ALLOWING PEAVY TO INTRODUCE EVIDENCE ON, AND THEN AMEND THE PLEADINGS TO ENCOMPASS, THE FOLLOWING: 1) THE POLICY'S DEFINITION OF TOTAL DISABILITY VERSUS THE ALLEGED MISSISSIPPI DEFINITION, 2) THE SEPARATE PREMIUM  SEPARATE COVERAGE ARGUMENT, 3) THE LIMITATION OF LIABILITY ARGUMENT, 4) THE AUTOMATIC PREMIUM LOAN PROVISION, AND 5) INDEPENDENT LIFE'S NET WORTH?
In his complaint Peavy alleged, inter alia, 1) that Watson and Davis made fraudulent misrepresentations to him, specifically that by filing for waiver of premium he would lose his double indemnity, and that he could file at a later time; 2) that Independent Life failed to allow the disability claim even though the company knew Peavy was totally disabled; and 3) that Independent Life "willfully and in bad faith used the unequal wealth and bargaining position of the parties to effect economic gain for [Independent Life]."
Under this assignment, Independent Life really makes two arguments: that it was error for the court to admit the evidence in question and allow the pleadings to be amended, and that the evidence thus allowed was legally insufficient to sustain the finding of liability and the assessment of punitive damages.
To the extent that the trial court allowed evidence that Independent Life denied the claim by using an invalid definition of total disability, the issue was within the scope of the complaint. In that complaint Peavy alleged that Independent Life "[failed] to allow [Peavy's] claim for waiver of premium benefits at a time when [Independent Life] knew [Peavy] was totally disabled and entitled to said benefits under said insurance policy."
The trial court also allowed evidence that Peavy paid three (3) separate premiums for the basic policy, the double indemnity benefit, and the waiver of premium benefit; and evidence that Independent Life, in the policy, made the double indemnity benefit dependent on the insured's not filing for waiver of premium. Apparently, Peavy hoped to use this evidence in support of a claim that, because he had paid a premium for the double indemnity benefit, the company committed a wrongful act by conditioning continuation of that benefit on Peavy's refraining from filing for waiver of premium. In his complaint Peavy alleged that the company's representation to him regarding loss of double indemnity was fraudulent.
The pleadings were sufficient, under the applicable standard, to give notice of the claims which Peavy advanced at trial. A pleading is to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(1), Mississippi Rules of Civil Procedure. The comment to Rule 8 begins with this statement: "The purpose of Rule 8 is to give notice, not to state facts and narrow the issues as was the purpose in prior Mississippi practice."
Independent Life also claims that the issue of its failure to activate the automatic premium loan provision of Peavy's policy when he failed to pay the premium was beyond the scope of the pleadings. Even under the relaxed "notice pleading" *1117 of Rule 8, this issue was, as Independent Life argues, beyond the scope of the pleadings. Nevertheless, it was not error to allow the proof, since Rule 15(b), Mississippi Rules of Civil Procedure, provides that "[i]f evidence is objected to at trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits... . The court shall be liberal in granting permission to amend when justice so requires."
Finally, Independent Life complains of the admission of evidence of its net worth, which was not alleged in the complaint. Peavy, in his complaint, prayed for punitive damages, so the evidence of net worth was clearly relevant. A defendant's net worth is normally ascertained during discovery, and to require that such a matter be included in the complaint would contravene the purpose of Rule 8. This argument is actually another verse of Independent Life's theme song: the assertion that punitive damages are inappropriate in this case. We have disposed of that issue.

III. DID THE TRIAL COURT ERR IN DRAFTING PEAVY'S JURY INSTRUCTIONS, AND IN GRANTING INSTRUCTIONS C-5 AND C-6 AND IN AMENDING INSTRUCTION D-1 AND IN REFUSING INSTRUCTIONS D-13 AND D-14?
First, Independent Life claims that the trial court erred in drafting Peavy's instructions. Peavy had drafted twenty-one (21) proposed instructions, a number of them concerning punitive damages. At the charge conference, the court expressed concern that the giving of such a large number of instructions on punitive damages would unduly emphasize the issue. After much discussion, the court proposed that it draft the instructions on punitive damages, and did so.
Newell v. State, 308 So.2d 71 (Miss. 1975) is dispositive of the issue. There we held that "in addition to the written instructions presented for approval by the attorneys for the litigants, ... the trial judge may initiate and give appropriate instructions in addition to the approved instructions submitted by the litigants if, in his discretion, he deems the ends of justice so require." Newell, 308 So.2d at 78. The trial court did not err in drafting the instructions.
Next, Independent Life argues that the instructions themselves were erroneous in certain respects. The following is Instruction C-5, the giving of which Independent Life assigns as error:
The Court instructs the jury that if you find from a preponderance of the evidence in this case that the Defendant insurance company was guilty of abuse, gross negligence, malice, fraudulent or outrageous conduct in this cause with regard to the handling or the unjustifiable refusal, if any, to pay the legitimate claim of George R. Peavy, you may award George R. Peavy additional damages in this case by way of punitive damages. Punitive damages are added damages awarded for public service in bringing a wrongdoer to account, as an example to warn and deter others from repeating the same act. Such damages are never awarded to benefit the injured party or as a matter of right, but rather to punish and compel the wrongdoer to have due and proper regard for the rights of the public.
In assessing the amount of punitive damages, if any, to be awarded to the Plaintiff, you may take into account the financial status of the Defendant.
Independent Life argues that, while unjustifiable refusal to pay the claim would be a basis for the imposition of punitive damages, the "handling" of a claim is not. Independent Life's argument is based on the erroneous assumption that unjustifiable refusal to pay a legitimate claim is the only basis for imposing punitive damages against an insurance company. Under Mississippi law, acts other than unjustifiable refusal to pay a claim may warrant an *1118 award of punitive damages against an insurance company. Henderson v. United States Fidelity & Guaranty Co., 620 F.2d 530 (5th Cir.1980) (failing to disclose internal company policy may void "arguable reason" defense); National Life v. Miller, 484 So.2d 329 (Miss. 1985) (using agent's false statement on application as reason to deny claim vitiated company's "arguable reason" defense).
Independent Life also asserts that the trial court erred in giving Instruction C-6, which is as follows:
The Court instructs the jury that in considering whether or not the Defendant insurance company has been guilty of any abusive, grossly negligent, malicious, fraudulent or outrageous conduct with regard to the handling or refusal, if any, to pay the claim of the Plaintiff for benefits under the contract of insurance which is the subject of this cause, you may consider any efforts of the Defendant insurance company to rely upon provisions of the insurance contract to the detriment of the insured, or for the purpose of misleading the insured, which policy provisions the Defendant either knew or by the exercise of reasonable diligence should have known would have been void or invalid as policy provisions as being contrary to the public policy and laws of the State of Mississippi as expressed in the statutes of this State or the decisions of the Mississippi Supreme Court. It is the law of this State (and any policy provisions to the contrary are invalid) that: (A) the separate coverages concerning total disability and accidental death benefits are separate contracts for which separate premiums were charged and paid. The Court further instructs you that any language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid; and, (B) a man is not required to be absolutely flat on his back in order to be classified as totally disabled. You are instructed that in order to be totally disabled, an insured must be unable to engage in his usual business or occupation, and must also be unable to engage in any comparable occupation or employment for which he is fitted by education, training, or experience.
The trial court's definition of total disability is consistent with Mississippi law, Ezell v. Metropolitan Insurance Co., 228 So.2d 890 (Miss. 1969); Prudence Life Insurance Co. v. Wooley, 254 Miss. 500, 182 So.2d 393 (1966), as is its statement that the separate coverages in the policy were separate contracts, Travelers Indemnity Co. v. Wetherbee, 368 So.2d 829 (Miss. 1979). Neither instruction constituted reversible error.
Next, Independent Life claims that the trial court erred in modifying Instruction D-1. That instruction reads as follows, the language in brackets being that which the trial court omitted:
As used in the life insurance policy Mr. Peavy has with The Independent Life and Accident Insurance Company "total disability" is defined:
1. Incapacity to engage in any occupation for remuneration or profit, which incapacity is the result of bodily injury or disease suffered or contracted after the date of this disability provision; or
2. The loss by severance of both hands at or above the wrist, of both feet at or above the ankle, or of one hand and one foot at or above the wrist and ankle respectively; or
3. The permanent loss of sight of both eyes.
Also under the Agreement Providing Waiver of Premiums in Event of Total Disability the provision concerning Notice of Claim provides in pertinent part as follows:
No claim for benefits hereunder shall be valid unless total disability is established as provided elsewhere herein and written notice thereof is given to and received by the company during the lifetime of the insured and during the continuance of total disability. Failure to give such notice within such time shall not invalidate any claim if it shall be shown that it was not reasonably possible to give it within *1119 such time and that such notice was given as soon as was reasonably possible... . Therefore, if you believe from a preponderance of the credible evidence that Mr. Peavy did not submit his claim for waiver of premium under his life insurance policy during the continuance of total disability, that is, he submitted it at a time when he was not totally disabled [as defined in the policy] and if you find from a preponderance of the evidence that Mr. Peavy did not show the company that it was not reasonably possible to give such notice during the continuance of total disability, then the Court instructs you to find for the defendant, The Independent Life and Accident Insurance Company.
Independent Life claims that by omitting the words "as defined in the policy," the trial court abrogated the company's right to contract and, in effect, instructed the jury to award punitive damages, since the trial court, in another instruction, informed the jury that, in Mississippi, a man does not have to be flat on his back to be considered totally disabled.
The trial court did not err in modifying the instruction. Without the alteration, the instruction would have allowed Independent Life to escape liability by including an invalid provision in its policy and then relying on that invalid provision to deny the claim. An insurance company cannot simply ignore changes in the law, and an attempt to do so has been held, in the Fifth Circuit, to be a basis for assessing punitive damages. Richards v. Allstate Insurance Co., 693 F.2d 502 (5th Cir.1982). We do not suggest that punitive damages are always appropriate whenever an insurance policy contains a provision which is invalid under state law. An insurer is not, however, entitled to a peremptory instruction on liability to the effect that the insurer can never be liable (even for actual damages) when it acts in accordance with the provisions of its policy, regardless of their invalidity.
Independent Life next claims that the trial court erred in refusing Instruction D-13, which would have instructed the jury that the parties were free to contract as they pleased, that they were therefore bound by the contract, and that the policy was "a valid contract of life insurance." Again, Independent Life is, in effect, arguing that provisions in its policy are valid by virtue of being in the policy, regardless of whether they comport with state law. Clearly, this Court has the power to declare a policy provision invalid. Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973). Indeed, the policy's definition of total disability is invalid in light of this Court's holding that a person does not lose his status as being totally disabled simply because he is able to "sit on a street corner and sell peanuts and shoe strings." Ezell v. Metropolitan Insurance Co., 228 So.2d 890, 892 (Miss. 1969).
Finally, Independent Life assigns as error the trial court's refusal of Instruction D-14, a peremptory instruction on punitive damages. This argument is another refrain of the "inappropriate for punitive damages" tune, which is discussed in connection with the first assignment of error. The trial court did not err in instructing the jury.
Returning to Independent Life's complaints about the admission of evidence on 1) the invalidity of the policy's definition of total disability, 2) the policy provision that the insured forfeited his double indemnity when he filed for waiver of premium, and 3) the company's failure to use the automatic premium loan provision to pay Peavy's premium, we conclude that the first two were relevant to the issue of malice or reckless disregard for the insured's rights, and thus relevant as to the appropriateness of punitive damages. As to Independent Life's claim that evidence of its failure to activate Peavy's automatic premium loan was improperly admitted, we note that the failure was a separate incident from the denial of the claim for waiver of premium. Although its probative value is thus lessened somewhat, the admission of such evidence is largely within the discretion of the trial judge. Mississippi Power and Light v. Shepard, 285 So.2d *1120 725, 740 (Miss. 1973). See also Rule 401, Mississippi Rules of Evidence (effective January 1, 1986) (evidence is relevant which has tendency to make fact of consequence more or less probable). This evidence was probative on the issue of punitive damages, and the trial court did not err in admitting it.

IV. IS THE JURY VERDICT CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND CONTRARY TO LAW?
Independent Life first repeats its "arguable reason" defense, discussed above, and then asserts that the award should be reduced. In support of its argument for reduction, Independent Life cites cases from foreign jurisdictions which, arguably, require some relation between the amount of punitive damages and the amount of actual damages, Johnson v. American Mutual Liability Ins. Co., 335 F. Supp. 390 (W.D.Mo. 1971); Dowling v. J.C. Penney Co., 300 F. Supp. 307 (W.D.Pa. 1969); Wegner v. Rodeo Cowboys Association, 290 F. Supp. 369 (D.Colo. 1968), and then cites Mississippi cases for the proposition that the jury, in its determination of the amount of punitive damages, is not to be arbitrary or unreasonable. Commodore Corp. v. Bailey, 393 So.2d 467 (Miss. 1981); Gulf, Mobile & Ohio R.R. Co. v. Hawthorne, 225 Miss. 1, 82 So.2d 454 (1955). Finally Independent Life cites Henderson v. United States Fidelity and Guaranty Co., supra, in which the Fifth Circuit Court of Appeals held that the amount of actual damages is one factor to be considered in assessing punitive damages.
In the case at bar the actual damages were $412.20. The punitive damages were $250,000, and Independent Life's net worth was in excess of $130,000,000. Thus, the award of punitive damages was less than two tenths of one percent of Independent Life's net worth. This award, though it is vastly larger than the actual damages, is not excessive in light of such factors as 1) the amount necessary to punish and deter the wrongdoer, 2) the amount necessary to deter others, and 3) Independent Life's financial worth. Banker's Life and Casualty v. Crenshaw, 483 So.2d 254, 278 (Miss. 1985), probable jurisdiction noted, ___ U.S. ___, 107 S.Ct. 1367, 94 L.Ed.2d 683 (1987).
The trial court committed no reversible error in the case at bar. Independent Life's actions warranted the imposition of actual and punitive damages. The judgment is therefore affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
HAWKINS, P.J., dissents.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent. In my view, this case does not present a jury issue on punitive damages.