# IN THE COURT OF APPEALS 04/08/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 96-CA-00332 COA


TOMMY A. DABBS

APPELLANT

v.

JAMES IRBY AND DWIGHT STANFORD

APPELLEES


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. GEORGE C. CARLSON JR.

COURT FROM WHICH APPEALED: DESOTO COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

GERALD W. CHATHAM, SR.

ATTORNEY FOR APPELLEES:

PAUL R. SCOTT

NATURE OF THE CASE: CIVIL LIABILITY

TRIAL COURT DISPOSITION: COMPENSATORY DAMAGES OF $2,500 AND $3,000; PUNITIVE DAMAGES OF $20,000

MANDATE ISSUED: 8/29/97


BEFORE BRIDGES, C.J., HERRING, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

Tommy A. Dabbs was found liable for the shooting deaths of two hunting dogs belonging to James Irby and Dwight Stanford. The trial court awarded compensatory damages in the amount of $3000 to Mr. Irby and compensatory damages in the amount of $2,500 to Mr. Stanford. The trial court also awarded punitive damages in the amount of $20,000. Feeling aggrieved, Mr. Dabbs filed this appeal.

## FACTS

On December 23, 1992, the appellees, Irby and Stanford, were raccoon hunting when three of their hunting dogs struck the trail of a raccoon which led them toward appellant Dabbs's property. The testimony indicated that as the dogs approached Dabbs's property a person on an all terrain vehicle fired several shots and two of the dogs never returned to Irby and Stanford. The following morning, Stanford along with the sheriff and two other men went to Dabbs's home and requested permission to look for the dogs on his property. Dabbs agreed and Stanford began his search at the location where the shots had been fired the night before. At this location, Stanford discovered two puddles of blood and several spent shotgun shells. Stanford also found four-wheeler tracks in the frost and followed drops of blood between the tire tracks back toward Dabbs's house. A month or two later, the two dogs were found in a drainage ditch approximately four miles away from the appellant's property. Dabbs denied shooting the dogs and none of the witnesses could positively identify Dabbs as being the person who fired the shots on the night of December 23.

The jury was instructed as to the law regarding liability and compensatory damages and returned the verdicts in favor of both appellees as stated above. Pursuant to the provisions of Mississippi Code Section 11-1-65, the trial court determined that the issue of punitive damages should be presented to the jury. Dabbs testified that his net worth was "probably" zero because he had transferred all of his assets to his wife in an effort to divest himself of any assets so that he would qualify for social security disability. The appellees indicate that Dabbs was also questioned about other assets that he owned, including several antique automobiles, a gun collection, real estate, and other items. After receiving the court's instructions and hearing argument of counsel, the jury returned a punitive damage verdict of $20,000.

## ANALYSIS

> I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE ATTORNEY FOR THE PLAINTIFFS TO QUESTION PROSPECTIVE JURORS ON VOIR DIRE EXAMINATION BY GIVING THEM A HYPOTHETICAL WHICH WAS ERRONEOUS AND THEN ASKING THE PROSPECTIVE JURORS TO COMMIT WHETHER OR NOT, UNDER THE SET OF HYPOTHETICAL FACTS, THEY WOULD RETURN A VERDICT IN FAVOR OF THE PLAINTIFFS.

Dabbs contends that the appellees' attorney, Paul Scott, violated Circuit Court Rule 3.02 when he posed a hypothetical to one of the prospective jurors and asked for a response. The exchange between Mr. Scott and a prospective juror took place following a question posed by one of the prospective jurors after an explanation of the standard of proof by Mr. Scott. The exchange that

occurred is as follows:

> UNIDENTIFIED PROSPECTIVE JUROR: A vermin laying five foot inside a fence row with a shotgun blast you're going to blame it on the man that owns the manor and he's got 192 shotguns? Is that what you mean by circumstantial and preponderance of the evidence?

> MR. SCOTT: That's not what the facts of this case are.

> UNIDENTIFIED PROSPECTIVE JUROR: That's just what I'm asking about circumstantial. I don't know what the facts of this case are.

> MR. SCOTT: It will be more than that.

> UNIDENTIFIED PROSPECTIVE JUROR: Okay.

> MR. SCOTT: Let me give you a for instance on that.

> UNIDENTIFIED PROSPECTIVE JUROR: Okay.

> MR. SCOTT: Suppose you've got witnesses, four people that see a dog shot.

> UNIDENTIFIED PROSPECTIVE JUROR: Physically shot or a shot dog?

> MR. SCOTT: No, physically shot.

> UNIDENTIFIED PROSPECTIVE JUROR: Okay.

> MR. SCOTT: Where a man fired a gun on a piece of property that nobody else has access to.

> UNIDENTIFIED PROSPECTIVE JUROR: Okay.

> MR. SCOTT: And the dog was killed. That's the kind of circumstantial evidence I'm talking about.

> UNIDENTIFIED PROSPECTIVE JUROR: That's solid enough.

Dabbs contends that the jury was conditioned by the appellees and the judge that one should return a verdict against the appellant. Dabbs argues that this is evident by the fact that the jury found Dabbs liable even though the appellees's four witnesses could not identify the person whom they claim shot the dog.

The appellees contend that they did not violate Circuit Court Rule 3.02 as their attorney, Mr. Scott, made no attempt to have the prospective juror pledge a particular verdict based upon a particular set of facts. We agree. Circuit Court Rule 3.02, which is now embodied in Circuit Court Rule 3.05, does state in pertinent part that "[n]o hypothetical questions requiring any juror to pledge a particular verdict will be asked." However, having reviewed the record, we do not find the exchange between Mr. Scott and the prospective juror to be violative of Rule 3.05. It is clear from the record that the Mr. Scott was merely attempting to respond to a question posed by one of the prospective jurors.

The record does not indicate that Mr. Scott tried to get the prospective juror to pledge a particular verdict. We therefore find Dabbs's argument to be without merit.

> II. WHETHER THE PUNITIVE DAMAGE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE IN THAT THERE WAS NO IDENTIFICATION EVER MADE BY THE PLAINTIFFS OR ANY OF THEIR WITNESSES CONCERNING THE PERSON WHO ALLEGEDLY KILLED THE HUNTING DOGS AND NO GUN WAS EVER INTRODUCED INTO EVIDENCE AS HAVING KILLED THE DOGS.

Dabbs contends that the meager proof put on to establish the identity of the person who killed the dogs was not sufficient to support an award of punitive damages. Dabbs correctly points out that:

> Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.

Miss. Code Ann. § 11-1-65 (1972). Dabbs argues that actual malice was never proved by clear and convincing evidence because the proof of the identity of the alleged wrongdoer was so murky.

The appellees argue that the evidence, although circumstantial, was clear and convincing and that the evidence in the record does not contradict the jury's findings. We agree. The appellees cite to *Sessums v. Northtown Limousines*, 664 So. 2d 164, 165-68 (1995), a recent punitive damages case in which the jury awarded punitive damages of $100,000 against Sessums for allegedly rolling back the mileage on a limousine which had been in the possession of several different persons. Sessums denied that he rolled back the mileage on the odometer although the evidence clearly indicated that the odometer had been rolled back. *Id.* at 168. In *Sessums*, the court stated that the issue was whether the jury improperly determined who rolled back the odometer. *Id.* at 168. The appellees in the present case argue that *Sessums* is on point because here the issue raised by Dabbs is whether the jury improperly determined who shot the appellees's dogs. We find the appellees's argument to be persuasive. In affirming the verdict in *Sessums*, the Mississippi Supreme Court stated:

> An assignment of error that the case is against the weight of the evidence is misplaced when, as here, the parties are essentially engaged in a swearing contest. Nevertheless, when the evidence is conflicting or contradictory, this Court will defer to the jury's determination of the credibility of the witnesses and the weight and worth of their testimony. The reviewing court cannot, therefore, set aside a verdict unless it is clear that the verdict is a result of prejudice, bias or fraud, or is manifestly against the weight of the credible evidence.
>
> Resolution of the conflicting testimony in this case was within the province of the jury. Clearly, the jury believed Hall's story and the testimony supporting it and not Sessum's version and supporting evidence. Choosing to believe one story rather than another is not grounds for reversal. In as much as the evidence in the record does not contradict the jury's findings, we affirm the decision of the court below.

*Id.* at 168-69 (citations omitted). The *Sessums* court went on to state that "a plaintiff is entitled to punitive damages only if he has demonstrated a willful or malicious wrong or the gross, reckless disregard for the rights of others." *Id.* at 169 (citation omitted).

In the present case, the appellees presented credible evidence that they, along with two others, were coon hunting in the vicinity of Dabbs's property on December 23, 1992; that as they neared Dabbs's property line they saw a person on an ATV; that shots were fired by the person on the ATV; that the two dogs in question did not return; that no other adults other than Dabbs and his wife were at the appellant's home on the night in question; that the next day two puddles of blood were found in the approximate location where shots were heard; that several spent shotgun shell casings were found in the area; that drops of blood were found along a trail leading to Dabbs's home; and that a month later the remains of the dogs with a bullet wound in each were found in a ditch several miles from the appellant's home.

The jury in this case heard all of the evidence and had the opportunity to judge the credibility of the witnesses' testimony. The jury was also properly instructed that it must find from "clear and convincing evidence in this case that the acts of the Defendant involving the Plaintiff [sic] were willful, wanton, malicious or in gross disregard of the safety and well being of the Plaintiffs."

Clearly, the jury believed the facts to be as the appellees contended. The mere fact that the jury chose to believe the appellees's version of the events as opposed to Dabbs's version is not grounds for reversal. We find that the evidence in the record does not contradict the jury's findings. Therefore, we will not set aside the award of punitive damages.

## III. WHETHER THE AMOUNT OF PUNITIVE DAMAGES AWARDED WAS EXCESSIVE AND EVINCED PASSION AND PREJUDICE.

Dabbs argues that the punitive sum of $20,000 is clear evidence of a runaway jury. Dabbs contends that the verdict was in excess of any other punitive damage verdict involving the killing of hunting dogs that he could find. Dabbs contends that the evidence showed that his net worth was zero and that the verdict clearly evinces bias and prejudice on the part of the jury. Dabbs argues that this case is not one that involves a large insurance company that wrongfully denied claims but involves two hunting dogs that were trespassing on another man's land late at night.

In reviewing the reasonableness of a punitive damage award, we are guided by both case law and statutory law. The Mississippi Supreme Court has stated:

> Measurement of the amount [of punitive damages] is a matter solely committed to the jury's fettered discretion. Generally, the jury's determination will remain undisturbed. However, an award may be vacated or reduced in some cases for exceptional reasons. Those reasons can include the fact that the amount is arbitrary or unreasonable, against the overwhelming weight of the evidence, or evinces passion, bias and prejudice on the part of the jury so as to shock the conscience . . . . "'Of utmost significance, a jury verdict will not be disturbed simply because it seems 'too high' or 'too low.'"

*Ross-King-Walker, Inc. v. Henson*, 672 So. 2d 1188, 1193 (Miss. 1996) (citations omitted). The Mississippi Code sets forth a listing of factors to be considered by the fact-finder in determining the amount of punitive damages, Miss. Code Ann. § 11-1-65(1)(e) (Supp. 1996), and also guides us in determining whether an award is excessive:

> (f)(i) Before entering judgment for an award of punitive damages the trial court shall ascertain that the award is reasonable in its amount and rationally related to the purpose to punish what occurred giving rise to the award and to deter its repetition by the defendant and others.
>
> (ii) In determining whether the award is excessive, the court shall take into consideration the following factors:
>
>> 1. Whether there is a reasonable relationship between the punitive damage award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred;
>>
>> 2. The degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct;
>>
>> 3. The financial condition and net worth of the defendant; and
>>
>> 4. In mitigation, the imposition of criminal sanctions on the defendant for its conduct and the existence of other civil awards against the defendant for the same conduct.

Miss. Code Ann. § 11-1-65(1) (Supp. 1996).

In the present case, following the verdict of liability, a hearing on punitive damages was held in which both the appellant and the appellees were permitted to put on evidence. Following this hearing, the jury was instructed on the factors to consider in determining the amount of punitive damages per Mississippi Code Section 11-1-65(1)(e) (Supp. 1996). Thus, it is clear that the jury was given some guidance in its determination of the punitive amount and was not left to arbitrarily and unreasonably arrive at a punitive sum. Furthermore, as the appellees correctly point out, the punitive sum awarded in the case before us was only 3.6 times the amount of actual damages which is a low figure considering that some punitive awards have been as much as 600 times the amount of actual damages. *See Independent Life & Accident Ins. Co. v. Peavey*, 528 So. 2d 1112, 1120 (Miss. 1988) (The Mississippi Supreme Court affirmed a $250,000 punitive damage verdict that was more than 600 times the actual damages of $412.20). In *Mutual Life Ins. Co. v. Estate of Wesson*, 517 So. 2d 521, 533 (Miss. 1987), the court reduced an $8,000,000 punitive damage verdict to $1,500,000 where the actual damages were only $87,000. The reduced judgment was still seventeen times the actual damages. In *Employers Mutual Casualty Co. v. Tompkins*, 490 So. 2d 897, 909 (Miss. 1986), the court affirmed a $400,000 punitive damage verdict where the actual damage verdict was $500. Dabbs cites to *Dixie Insurance Co. v. Mooneyhan*, 684 So. 2d 574, 587 (Miss. 1996), to support his contention that the supreme court will not uphold excessive punitive damage awards. By comparison, however, the punitive damage award reversed in *Dixie* was 1,875 times the actual damages, a far cry

from the case before us.

We do not find the punitive award of $20,000 to shock the conscience of the Court. We find nothing in the record to indicate that the trial judge abused his discretion in allowing the award to stand. Keeping in mind the factors set forth in Mississippi Code Section 11-1-65(f)(ii), we find that there is a reasonable relationship between the amount of the award and the harm caused. We can also understand how the jury could have found the appellant's act to be reprehensible both in light of the fact that two pets were shot to death and the apparent concealment by Dabbs of the events that occurred from the moment that shots were fired until the time the dogs were found in a ditch several miles from Dabbs's house.

Dabbs's argument that the punitive award was excessive in light of his zero net worth is also without merit. The Mississippi Supreme Court has held that "net worth is only one factor to consider." *Ross-King-Walker, Inc.,* 672 So.2d at 1193. In the present case, the record indicates that Dabbs was permitted to present evidence of his net worth or lack thereof. There is nothing in the record to indicate that the jury failed to consider net worth in making its determination of the amount of the punitive award. The verdict simply indicates that the jury did not believe Dabbs's tale of recent poverty. We find that the jury was properly within its discretion to award punitive damages even if Dabbs's net worth were zero. *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1106 (Miss. 1992) (holding that a jury may assess punitive damages to a party having no net worth).

> IV. WHETHER THE COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE JURY RETURNED AN AWARD OF PUNITIVE DAMAGES BEFORE THE ISSUE OF PUNITIVE DAMAGE WAS SUBMITTED TO IT WHICH EVINCES THE BIAS AND PREJUDICE OF THE JURY.

Dabbs contends that the jury's consideration and award of punitive damages before the issue was formally presented to them for consideration is a direct violation of Mississippi Code Section 11-1-65(1)(b) which states that "[i]n any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages." Dabbs argues that a mistrial should be granted "when there is a strong appearance of unfairness if not actual prejudice." Dabbs contends that it is clear that the jury had already made up its mind as to punitive damages before receiving instructions and that such action demonstrates bias and prejudice on the part of the jury.

The appellees argue that Mississippi Code Section 11-7-159 authorizes the trial judge to reform an informal or defective verdict at the bar. We agree. We also note that Mississippi Code Section 11-7-157 states that "[n]o special form of verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering the verdict, a judgment shall not be arrested or reversed for mere want of form therein." In the present case, the jury, apparently acting on its own, decided that punitive damages should be considered and awarded. The trial judge, in accordance with Mississippi Code Section 11-7-159, reformed the verdict to delete the reference to punitive damages. Subsequently, the jury was presented proof on the issue of punitive damages, properly instructed, and heard the arguments of both attorneys. The jury then returned another punitive damages verdict which was substantially larger than the initial punitive award of $1,500.

We do not find the appellant to have been prejudiced by the surplusage in the compensatory verdict.

The jury, after hearing the evidence of Dabbs's net worth and being properly instructed on what they could consider in arriving at a punitive sum, apparently felt it necessary to award a sum substantially larger than the amount it originally contemplated. We do not fault the jury for this change of mind nor do we find that the trial judge abused his discretion in allowing the punitive award to stand.

### V. WHETHER THE APPELLEES' ATTORNEY MADE IMPROPER COMMENTS ON THE FACTS DURING CLOSING ARGUMENT.

Dabbs contends that the following statement by the appellees's attorney went beyond the facts which were in evidence and improperly influenced the jury: "the trail of blood led right up to Mr. Dabbs's house . . . ." Dabbs argues that there was no testimony that the blood led *all* the way up to his house and that comments by the appellees's attorney indicating such was an improper comment on facts not in evidence.

The appellees argue that Dabbs is procedurally barred from raising this issue because he failed to make a contemporaneous objection to the statement during closing argument. We agree. It is well-established in our case law that "a contemporaneous objection to improper argument during trial is required to preserve the issue for appeal." *Holly v. State*, 671 So. 2d 32, 35-36 (Miss. 1996); *Foster v. State*, 639 So. 2d 1263, 1290 (Miss. 1994) (plurality); *see also Whigham v. State*, 611 So. 2d 988, 995 (Miss. 1992).

Notwithstanding the procedural bar, however, we will address the issue on its merits. The appellees are correct in that the record contains testimony that a trail of blood was discovered which led almost to Dabbs's house. Eddie Mack, Dwight Stanford, and Scotty Wood each testified that they saw drops of blood leading in the direction of Dabbs's house. We find this testimony to support the statement made by the appellees's attorney during closing argument. The Mississippi Supreme Court has indicated that an attorney is entitled to great latitude in framing his closing argument. *Dunaway v. State*, 551 So. 2d 162, 163 (Miss. 1989). In *Taylor v. State*, the court held:

> The right of argument contemplates liberal freedom of speech and range of discussion confined only to bounds of logic and reason; and if counsel's argument is within the limits of proper debate it is immaterial whether it is sound or unsound, or whether he employs wit, invective and illustration therein. Moreover, figurative speech is legitimate if there is evidence on which it may be founded. Exaggerated statements and hasty observations are often made in the heat of debate, which, although not legitimate, are generally disregarded by the court, because in its opinion they are harmless.

*Taylor v. State*, 672 So. 2d 1246, 1269 (Miss. 1996) (quoting *Monk v. State*, 532 So. 2d 592, 601 (Miss. 1988)). In the present case, the attorney for the appellees did not exceed the bounds of permissible argument. We therefore find Dabbs's argument to be without merit.

### VI. WHETHER THE JURY PROPERLY CONSIDERED THE NET WORTH OF DABBS IN ARRIVING AT A FIGURE FOR PUNITIVE DAMAGES.

Dabbs again argues that the punitive award was excessive in light of Dabbs's zero net worth. We addressed this issue in the latter portion of issue three and see no need to revisit it here. Suffice it to say that net worth is but one factor to be considered in determining a punitive award. The record

gives us no indication that the jury did not consider Dabbs's testimony concerning his net worth. As we have already stated, it is apparent that the jury did not believe that Dabbs had a zero net worth.

**THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. STATUTORY PENALTY AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, KING, AND SOUTHWICK, JJ., CONCUR.**