409 F.2d 1101
 Harry C. FREEMAN, Virginia Freeman Johnson, and Frances D. Reynolds, Plaintiffs-Appellants,
v.
E. W. WARRIOR, W. G. MOFFITT, L. A. Rounds, George Easley and B. J. Traw, as the Board of Education of Indian Capitol Area Vocational-Technical School, District No. 4, and Indian Capitol Area Vocational-Technical School, District No. 4, Defendants-Appellees.
Harry C. FREEMAN et al., Plaintiffs-Appellees,
v.
E. W. WARRIOR et al., Defendants-Appellants.
 No. 179-68.
 No. 180-68.
 United States Court of Appeals Tenth Circuit.
 April 17, 1969.
 Rehearing Denied May 14, 1969.
 
 Andrew Wilcoxen and Wilcoxen, Gephart, Lunn & Mayes, Muskogee, Okl., for appellants in No. 179-68 and the appellees in No. 180-68.
 R. Forney Sandlin, Muskogee, Okl., filed briefs for the appellees in No. 179-68 and appellants in No. 180-68.
 Before BREITENSTEIN, SETH, and HICKEY, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 Warrior and his co-defendants, as members of an Oklahoma Board of Education, contracted to buy a tract of land from Freeman and his co-plaintiffs. The buyers breached the contract and the sellers sued for specific performance or, in the alternative, for damages. Jurisdiction is based on diversity. The district court denied specific performance. This aspect of the judgment is not attacked. Damages were awarded the sellers in the amount of $6,000. All parties attack this award. The buyers also claim that the court erred in finding that the purchase contract was enforceable.
 
 
 2
 The purchase agreement covered a tract of about 40 acres near Muskogee, Oklahoma, and fixed the price at $60,000 of which $250 was paid down. The agreement was contingent upon the availability of funds and approval of the site by the State Department of Vocational Education. These conditions were met. Funds were made available by a bond election and the State Department gave its approval. The buyers had the title examined and arrangements were made for the satisfaction of technical title defects. Thereafter, the State Department withdrew its approval because of anticipated highway construction affecting the site. The buyers then refused to perform the agreement.
 
 
 3
 The buyers say that the contract was not enforceable because the Oklahoma statutory requirements of attestation by the secretary and attachment of the corporate seal were not met.[1] The contract was discussed at a meeting where all board members were present and were given an opportunity to examine the instrument. The president signed the original agreement in their presence. Later, a technical change in the description necessitated a new agreement which was signed by the president. Thereafter the Board recognized and ratified the agreement. In Corvino v. 910 South Boston Realty Company, Okl., 332 P.2d 15, 17, the Oklahoma Supreme Court said that in a comparable situation the instrument was the act of the corporation and was binding on it. We agree with the trial court that when the stated conditions were met, the purchase agreement became binding and enforceable.
 
 
 4
 The trial court gave judgment to the buyers for $250, the amount of the down payment. This was consistent with the denial of specific performance. It also gave judgment to the sellers for $6,000 as the amount of actual damage. The buyers assert that the $250 payment should be treated as liquidated damages and precludes any award of actual damages. The sellers say that they are entitled to actual damages and that the amount is the difference between $40,000, which their expert testified was the market value of the property, and $60,000 which was the contract price.
 
 
 5
 An Oklahoma statute, 15 Okl.St.Ann. § 215, provides that a contractual provision for liquidated damages "shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix actual damage." We agree with the trial court that the statute does not apply because the ascertainment of actual damages is neither impracticable nor extremely difficult.
 
 
 6
 Another statute, 23 Okl.St.Ann. § 28, says that when a real estate purchase contract is breached, the detriment to the seller is "the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property to him." The trial court equated the phrase "value of the property to him" with "market value." In the absence of any Oklahoma decision to the contrary, the construction of the statute is correct.
 
 
 7
 The sellers assert that the only evidence of the market value was the testimony of their agent, who negotiated the sale and who testified that the market value was $40,000. In fixing this value, he gave no evidence of any comparable sales. The buyers put on no evidence of value. The trial court said that it could not ignore the facts that the agreed sale price was $60,000; that the buyers considered several other tracts before entering into the purchase agreement; and that no evidence indicates that the transaction "was anything other than an arms-length agreement as to price." In our opinion the trial court correctly considered the agreed purchase price in arriving at its finding that the market value was $54,000. This is within the range of the evidence and is not clearly erroneous. See King v. Grand River Dam Authority, 10 Cir., 336 F.2d 682, 684, and Buena Vista Homes, Inc. v. United States, 10 Cir., 281 F.2d 476, 480. Damages were properly awarded in the amount of the difference between the contract price of $60,000 and the market value of $54,000.
 
 
 8
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 16 Okl.St.Ann. § 94 reads: "Every deed or other instrument affecting real estate executed by a corporation, except when executed by an attorney in fact, must be attested by the Secretary, Assistant Secretary or Clerk of such corporation, with the corporate seal attached."