413 F.2d 701
 HENSEL PHELPS CONSTRUCTION Co., a Colorado corporation and
Aetna Casualty and Surety Company, a Connecticut
corporation, Appellants,
v.
UNITED STATES of America for the Use and Benefit of Reynolds
Electrical and Engineering Company, Inc., Appellee.
 No. 10137.
 United States Court of Appeals Tenth Circuit.
 July 28, 1969.
 
 John J. Mullins, Jr., Denver, Colo. (Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., were with him on the brief), for appellants.
 Stuart S. Gunckel, Denver, Colo. (Akolt, Shepherd, Disk & Rovira, Denver, Colo., were with him on the brief), for appellee.
 Before LEWIS, BREITENSTEIN and HOLLOWAY, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 In this Miller Act case, Reynolds Electrical and Engineering Company, a subcontractor, had judgment for $22,660 against Hensel Phelps Construction Company, the prime contractor, and its surety because of extra work performed by Reynolds in the construction of certain motor repair shops for the United States at Fort Carson, Colorado.
 
 
 2
 Hensel Phelps disputes the findings of the trial court that the work was not covered by the written subcontract and that Reynolds performed the work at the request of Hensel Phelps. The prime contract included the installation of 120 electrically operated overhead doors. Reynolds was the electrical subcontractor. The doors were supplied by McKee Door Company. The disputed items relate to the wiring of certain switches controlling the doors and to the additional wiring necessitated by the relocation of the motors which operate the doors.
 
 
 3
 The operation of each door requires an electric motor, two limit switches, and a safety switch. At the time of execution of the Reynolds contract, the drawings showed the motor location on the wall at the top of the door and did not show the control wiring for the switches. The door contract with McKee was made some 8-10 months after the Reynolds contract. The drawings accompanying the McKee contract showed the motor location some 20 feet inside from the top of the door opening and set out the control wiring for the switches.
 
 
 4
 In its description of the work to be performed the Reynolds contract specifically includes all work under Section 36 of the specifications and says: 'Included in this subcontract are all required equipment connections, overhead door hookup, and fence grounding.' Section 36-21 of the specifications reads:
 
 
 5
 'All wiring for the connection of motors and control equipment as indicated on the electrical drawings shall be furnished and installed under this section of the specifications. Except as otherwise specifically noted, automatic-control wiring, signaling, and protective devices are not included in this section of the specifications, but shall be furnished and installed under other sections of the specifications. Control wiring not shown on the electrical drawings shall be furnished under other sections of the specifications.'
 
 
 6
 We are concerned with automatic control wiring which was not shown on the drawings and with additional wiring caused by the change in motor location.
 
 
 7
 The arguments of Hensel Phelps are not persuasive. The general reference in the contract to 'over head door hookup' does not control over the specific provision of 36-21 that 'automaticcontrol wiring, signaling, and protective devices' are not included. Reliance on 2 of the specifications is misplaced. It provides that anything mentioned or shown in either the specifications or drawings shall be considered as if mentioned in both. The wiring of the switches was not shown on the drawings originally submitted to Reynolds when it bid on and contracted to do the work, and 36-21 of the specifications excludes such wiring. The reference to 18-10c(5) of the specifications is not appropriate because that section is not included within the provision of the Reynolds contract covering the work to be performed. We construe 36-16 to cover design changes in the equipment. The Hensel Phelps construction would make 36-16 conflict with 36-21. The intent of the parties to a contract shall be ascertained from the contract as a whole rather than from a specific provision. Fanderlik-Locke Co. v. United States, 10 Cir.,285 F.2d 939, 947, cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823. When we view the Reynolds contract as a whole, we are convinced that neither the wiring for the switches nor the additional wiring required by the change in motor location was covered, or intended to be covered.
 
 
 8
 Before the execution of the Reynolds contract, an official of Reynolds discussed with an official of Hensel Phelps the situation regarding the overhead doors and said in effect that Reynolds was responsible for anything on the drawings. Hensel Phelps did not disagree. This testimony is said to be inadmissible. It was received subject to the court's determination of whether an ambiguity existed. If there was an ambiguity, the evidence was proper. If there was not, the evidence was not prejudicial. We agree with the trial court that the work in question was not covered.
 
 
 9
 Reynolds told Hensel Phelps before the electrical work on the doors was undertaken that it considered the wiring for switches and for the changed motor location extra work. Later, Reynolds wrote Hensel Phelps a letter saying that the work was extra and that its estimate therefor was $19,519. It also said that in the interest of maintaining the job schedules it would proceed with the questioned work. About two months thereafter, Hensel Phelps wrote McKee that it considered the questioned wiring part of the McKee contract. This evidence was pertinent because if the contract is not clear the conduct of the parties is given great weight in construing it. Sam Macri & Sons, Inc., v. United States, 9 Cir., 313 F.2d 119, 124; and see Fanderlik-Locke Co. v. United States, 10 Cir., 285 F.2d 939, 947, cert. denied 365 U.S. 860, 81 S.Ct. 826. Although we disagree with the Hensel Phelps contentions that the work was covered by the Reynolds contract, the effect of those contentions, if any, is to make the contract unclear. Hensel Phelps was not prejudiced by the admission of the evidence.
 
 
 10
 The wiring for the switches was not within the Reynolds contract. The change of motor location required additional wiring. A contractor who bids for work has the right to rely on the plans and specifications submitted to him for bidding purposes. Wunderlich Contracting Company v. United States, 10 Cir., 240 F.2d 201, 205, cert. denied 353 U.S. 950, 77 S.Ct. 861, 1 L.Ed.2d 859. Burdens other than those contemplated by the contract may not be placed upon the contractor without additional compensation. Id. The wiring in question was extra work for which Reynolds is entitled to be paid.
 
 
 11
 Reynolds is entitled to damages in an amount equal to the reasonable value of services and materials, including profit and overhead, for which they could be obtained under like circumstances. Wunderlich Contracting Company v. United States, 10 Cir., 240 F.2d 201, 205, cert. denied 353 U.S. 950, 77 S.Ct. 861, and Wynne v. United States, 10 Cir., 382 F.2d 699, 701. Three expert witnesses, Henley and Raque for Reynolds and Sharp for Hensel Phelps, testified on damages. We do not consider the letter from the Reynolds project engineer in which he estimated the extra work at $19,519 because that was an offer made to encourage an agreement on the extra work and it was not accepted by Hensel Phelps.
 
 
 12
 Henley, the district manager of Reynolds, testified that the amount claimed in the complaint, $23,156, was the reasonable value. He said that actual costs were not available because of the difficulty of keeping actual cost records when the extra work was done in conjunction with contract work. Henley based his figure on the original Reynolds estimate with adjustments for factors obtainable from job costs available at the end of the work. He also gave consideration to independent estimates one of which was prepared by an independent estimator in connection with a similar problem relating to 60 doors. That estimate was $11,560. Hensel Phelps argues that the Henley testimony should not be received because it is based on the expert opinion of another. We held in 6816.5 Acres of Land, etc. v. United States, 10 Cir., 411 F.2d 834, that an expert opinion may not be based on the opinion of another person. That rule is not controlling here because Henley used the independent estimates to corroborate the figure which he, Henley, had reached through his own analysis.
 
 
 13
 Raque, testifying for Reynolds, fixed the reasonable value of the extras at $25,757. Sharp, a witness for Hensel Phelps, testified that the value of the extras was a total of $9,309.79. The trial court found that the estimates of the Reynolds' witnesses 'were the most satisfactory.' Hensel Phelps argues at length the differences in approach between Henley and Raque and criticizes the methods used and the results obtained. We decline to enter into this area of disagreement. Hensel Phelps is not entitled to a trial de novo in the appellate court on the question of damages. The amount awarded is within the range of the evidence and is not clearly erroneous. Freeman v. Warrior, 10 Cir., 409 F.2d 1101, and cases there cited.
 
 
 14
 The trial court disallowed a claim by Reynolds for extra work resulting from the change in placement of plates on which the motor starters and disconnects were mounted. The change was from the top of each door to a location six feet above the floor. The amount claimed and disallowed was $496. Hensel Phelps says that a greater amount should have been disallowed. The project engineer for Reynolds fixed the value of the plate work at $496. Hensel Phelps offered no evidence on this item. The effect of the court's ruling was to deny any claim for the relocation of the plates. We believe that the trial court treated the item properly.
 
 
 15
 Affirmed.