**Louis Harold NICHOLS, Individually and as Executor of the Estate of Doris Maxine Nichols, Deceased, Plaintiff–Appellee,**

v.

**SHELTER LIFE INSURANCE COMPANY, Defendant–Appellant.**

No. 90–1119.

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1991.

See also 694 F.Supp. 218.

Robert L. Moore, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, Tenn., for defendant-appellant.

Gary P. Snyder, Bridgforth, Woods & Snyder, Hugh H. Armistead, Olive Branch, Miss., for plaintiff-appellee.

Before WISDOM and HIGGINBOTHAM, Circuit Judges.*

WISDOM, Circuit Judge:

Today we decide whether, under Mississippi law, the Shelter Life Insurance Company ("Shelter") may be held liable for the misrepresentations made by its agent to one of its insureds as to whether a particular claim would be covered. We conclude that a Mississippi jury can find Shelter liable. Accordingly, we find that the district court did not err in refusing to grant a directed verdict in favor of Shelter on the grounds that the contract between Mr. Nichols and Shelter allowed Shelter to deny payment of medical bills incurred as a result of a pre-existing condition. We further find that the district court did not err by failing to grant a partial directed verdict on punitive damages and emotional distress. We AFFIRM.

* This opinion was concurred in part and dissented in part by Judge Gee prior to his resignation from the Court on February 1, 1991.

## BACKGROUND

In this case the plaintiff alleged and the jury found that, in the spring of 1986, Randy Holland, while employed as an agent for the defendant Shelter, made a fraudulent or grossly negligent misrepresentation to Mrs. Doris Maxine Nichols in an attempt to induce her to purchase an insurance policy from Shelter. The testimony showed that in response to a question from Mrs. Nichols, Holland told her that her previous condition and treatment for leiomyosarcoma would not be considered pre-existing under the terms of a particular Shelter policy. In reliance on this statement, the Nichols purchased the Shelter policy and cancelled an existing policy which would have covered many of Mrs. Nichols's medical expenses if the cancer recurred, which it did. When Mrs. Nichols filed a claim for medical expenses incurred because of cancer treatment, Shelter denied coverage based on the clause in the policy which excluded from coverage losses occurring within two years after the policy was issued and were attributable to conditions which pre-existed the effective date of the policy.

The Nichols filed suit in Mississippi state district court seeking damages for Shelter's denial of Mrs. Nichols's claims. Shelter had the case removed to federal court. Mrs. Nichols died during the pendency of the lawsuit. The district court substituted Mr. Nichols, as executor of her estate, to represent her claims. After a three day trial, the jury answered special interrogatories and found that Mr. Nichols was entitled to recover under the insurance contract in the amount of $50,247.84; that Mr. Nichols was entitled to emotional distress and mental anxiety damages of $75,000; and that Mr. Nichols was entitled to recover punitive damages of $200,000. The district court denied Shelter's motions for a judgment notwithstanding the verdict and a new trial.

Shelter now appeals to us, contending that the district court should have directed a verdict because, under Mississippi law, the Nichols were bound by the language in the insurance contract, no matter what

Shelter's agent told them. Shelter further maintains that, even if we uphold the verdict on liability, the punitive damage award should not stand. We disagree with Shelter's position.

## DISCUSSION

### A. Compensatory Damages

Shelter contends that the provisions in its insurance application and policy that specifically exclude pre-existing conditions entitle it to judgment as a matter of law, citing *National American Life Insurance Co. v. Williams,* 204 So.2d 174 (Miss.1967), to support its contention. There is no dispute that Shelter's policy exclusion for pre-existing conditions is ordinarily valid and enforceable in Mississippi, assuming no misconduct on the part of the insurer or its agents occurred. *See Blue Cross & Blue Shield of Miss., Inc. v. Mosley,* 317 So.2d 58 (Miss.1975).

The issue, however, is whether the pre-existing condition exclusion in the contract between Mr. Nichols and Shelter can be altered by any statements made by Shelter's agent Randy Holland. The Nichols alleged, and the jury believed, that Holland made certain promises to Mrs. Nichols concerning the insurability of her condition in the event it should re-manifest itself. Although it was disputed at trial, Mrs. Nichols testified that she made full disclosure to Holland of her medical history and told him who her doctors were. The doctors' names and addresses are listed on the application. Holland gave Shelter only scant information concerning Mrs. Nichols's doctors, thereby failing to follow Shelter's guidelines for taking applications. Only Mr. Nichols signed the application, and neither of the Nichols read it.

Shelter first argues that any misrepresentations made were made to Mrs. Nichols, not Mr. Nichols, and that Mrs. Nichols was not a party to the contract since she did not sign it. Mr. Nichols certified the contents of the application as being true, and he possessed a brochure and a copy of the insurance policy which clearly defined pre-existing condition. Shelter cites au-

thority holding that to substantiate a claim for fraudulent inducement, misrepresentations as to post anniversary date coverage must have been made to the insured. *See Gorman v. Southeastern Fidelity Ins. Co.*, 621 F.Supp. 33, 39 (S.D.Miss.), *aff'd*, 775 F.2d 655 (5th Cir.1985). Shelter argues that Mr. Nichols could not have relied on any misrepresentations since no misrepresentations were made to him, and one who has not relied directly on a misrepresentation does not have a cause of action for misrepresentation. *See Baroni v. United States*, 662 F.2d 287, 289 (5th Cir.1981). Consequently, Shelter argues, since Mr. Nichols was not fraudulently induced to read the contract or have it read to him, he must abide by its terms. *See Pedersen v. Chrysler Life Ins. Co.*, 677 F.Supp. 472, 475 (N.D.Miss.1988).

■ These arguments are an attempt by Shelter to create a false distinction between the Nichols. The cases cited by Shelter, while stating general principles of law, do not address situations analogous to the Nichols's. Mrs. Nichols was a party to the insurance contract with Shelter. Mrs. Nichols was handling the purchase of a policy for herself and Mr. Nichols. Mrs. Nichols was shown as spouse on the application, and premiums were paid for her coverage. She was a "covered person" under the policy. Contrary to Shelter's position, Mrs. Nichols was anything but a stranger to the contract. Shelter's argument that the Nichols did not rely on any misrepresentations because Mrs. Nichols possessed the brochure and the policy must also fail because Mrs. Nichols asked Holland to explain a specific clause in the policy which she had read.

■ Shelter next argues that the Nichols did not make out a case for misrepresentation because all they showed was that Holland rendered an *opinion* that the cancerous tumor Mrs. Nichols had in 1985 would not be considered a pre-existing condition. Mississippi law holds that the expression of opinion cannot be the basis of an action for misrepresentation. *See Davidson v. State Farm Fire & Casualty Co.*, 641 F.Supp. 503, 514 (N.D.Miss.1986). In *Davidson*,

the court found that the statements that (1) State Farm had offered the best insurance the plaintiffs could purchase and (2) if the plaintiffs ever had a loss, State Farm would pay, were unenforceable opinions on which the plaintiffs had no right to rely. *Davidson* is not similar to the Nichols's case because it did not involve misstatements by the insurance agent as to the terms of the policy.

The Nichols's case is more apposite to *Independent Life & Accident Insurance Co. v. Peavy*, 528 So.2d 1112 (Miss.1988) in which the Mississippi Supreme Court affirmed an award of actual and punitive damages to a plaintiff who, after questioning agents of the defendant insurance company, was misinformed as to when to file his waiver of premium notice. Another similar case is *Ross v. Western Fidelity Insurance Co.*, 872 F.2d 665 (5th Cir.1989) where this Court reversed a summary judgment in favor of an insurer whose agent had incorrectly assured plaintiffs that the underwriting department would investigate their daughter's medical history before granting coverage. The Court stated that these "statements were not merely promises as to future actions; rather, they were representations relating to the company's underwriting procedures." *Ross*, 872 F.2d at 670.

Most recently, in the case of *Andrew Jackson Life Insurance Co. v. Williams*, 566 So.2d 1172 (Miss.1990), the Mississippi Supreme Court issued a comprehensive opinion discussing Mississippi law in a case where an insurance company's agents misrepresented the provisions of a policy to an insured. Insurance agents had met with Willie Williams, a forklift operator, and persuaded him to drop his current insurance policy by guaranteeing him immediate enrollment in Andrew Jackson's retirement program. This "retirement program" was touted as being more than an ordinary life insurance policy since it also entitled the insured to an immediate cash benefit of a $1,000 check. Willie and his wife Jerlean responded to questions by the agents, who completed the policy. The agents told Willie his policy would arrive at the plant

within two to three weeks. Several weeks passed, and the policy did not arrive.

In the meantime, Jerlean died of a heart attack. Willie's policy had still not arrived, and the agents tried to induce him to settle for $1,000, which he refused. Several months later, Willie received a letter from an Andrew Jackson official denying his claim for death benefits. One of the stated reasons for denial was that Jerlean was "uninsurable" because she had a heart condition that was not disclosed. Willie and Jerlean had disclosed her heart condition to Andrew Jackson's agents.

The Mississippi Supreme Court discussed the law of agency, reaffirming the law that "a principal is bound by the actions of an agent within the scope of that agent's real or apparent authority." *Andrew Jackson*, 566 So.2d at 1180 (citing *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880, 888 (Miss. 1987) and authorities therein). *See also American Soc'y. of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 566, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982). The Mississippi Supreme Court concluded that "the acts of an agent, who is deemed 'authorized' as a matter of law, are imputable to the insurer." *Id.*[1] A principal is liable for the frauds and misrepresentations of his agents, committed within the actual or apparent scope of authority, even where the principal had no knowledge of the agent's acts and received no benefit therefrom. *See Andrew Jackson*, 566 So.2d at 1180 and citations therein.

The Mississippi Supreme Court went on to discuss apparent authority, stating that "[a]pparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." *Andrew Jackson*, 566 So.2d at 1180 (citing *Ford v.*

*Lamar Life Ins. Co.*, 513 So.2d at 888). Three requirements must be met to recover under a theory of apparent authority:

(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance. *Andrew Jackson*, 566 So.2d at 1181 and citations therein.

■ These requirements were held to be met in the *Andrew Jackson* case. In the light of that case, Holland's actions are sufficient to bind Shelter under a theory of apparent authority. Holland was a formal agent of Shelter, whom the Nichols (persons with low educational abilities) were relying upon to handle their insurance coverage. Holland informed Mrs. Nichols that her previous treatment for cancer would not be regarded as a pre-existing condition for purposes of the Shelter policy. The Nichols reasonably relied on Holland's statements. "A life insurance company is bound by the acts of its *general agents* within the scope of their real or apparent authority [and] those dealing with such agents *without notice of restrictions* upon [the agents'] authority have a right to presume that [their] authority is co-extensive with [their] apparent scope and as broad as [their] title indicates." *Andrew Jackson*, 566 So.2d at 1182 (citing *McPherson v. McLendon*, 221 So.2d 75, 79 (Miss.1969) (emphasis in original)). The Nichols detrimentally relied on Holland's assurances in that they cancelled their ongoing insurance policy which had covered Mrs. Nichols's medical expenses for her past cancer treatments and would have covered any future expenses.

■ Shelter argues that its case is different from *Andrew Jackson* because it had a disclaimer in its policy. Mississippi law narrowly construes the provisions of an insurance policy against the insurer and

---

1. *See also National Life & Accident Ins. Co. v. Miller*, 484 So.2d 329, 335 (Miss.1985) ("[T]he weight of modern judicial authority throughout the country supports the proposition that 'knowledge acquired by a soliciting agent in the course of his employment in soliciting insurance, preparing and transmitting applications,

delivering policies, etc., is ordinarily imputed to the company.'"); *Ross v. Western Fidelity Ins. Co.*, 872 F.2d at 670 ("An insurance company cannot avoid a policy on the ground that material information was withheld when that information was given to the insurer's agent who took charge of preparation of the application.")

binds an insurance company for fraudulent representations made by its agent, absent conspicuous notice that the insurer will not be bound. *See Andrew Jackson,* 566 So.2d at 1181. In *Andrew Jackson,* the insurer's "blatant failure to provide notice of restrictions upon the agent's authority to avert misleading or fraudulent representations" was held sufficient to support a jury finding of apparent authority. *Id.* Mississippi law disregards limits contained in the policy as to the scope of an agent's authority, unless "clear and unequivocal" acts call such limits to the insured's attention and such limits are not hidden in "highly technical ... complicated and voluminous language." *Andrew Jackson,* 566 So.2d at 1192.

■ The Shelter insurance application does mention that "[n]o agent of Shelter Life Insurance Company ... is authorized to pass upon insurability." Shelter, however, issued a policy to the Nichols—admittedly relying on its own agent's misrepresentations in the application—thus, the lack of authority of a Shelter agent to express an opinion upon insurability is not at issue here. It is rather the authority of an exclusive agent to assure a prospective insured that a particular claim will be paid. The Mississippi Supreme Court has warned insurers that if they wish to disclaim all representations made by their agents, they must state their intention to do so, particularly given the industry's practice of allowing their agents to complete the application forms and paying their agents commissions based on the number of new policies issued.[2]

■ Shelter next argues that the Nichols's claim is barred by the Parole Evidence Rule since any misrepresentations made by Holland were made prior to the time the application for insurance was signed by Mr. Nichols. This argument must fail because

parole evidence is admissible to prove that fraud or misrepresentation induced one party to contract with another. *See Fornea v. Goodyear Yellow Pine Co.,* 181 Miss. 50, 178 So. 914, 918 (1938). In many cases persons have been permitted to testify about misrepresentations made by insurance agents and their reliance thereon. *See generally Andrew Jackson Life Ins. Co. v. Williams,* 566 So.2d 1172 (Miss. 1990); *Scott v. Transport Indem. Co.,* 513 So.2d 889 (Miss.1987); *Southside, Inc. v. Clark,* 460 So.2d 113 (Miss.1984); *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803 (Miss. 1983). In *Scott,* the Supreme Court of Mississippi stated:

> The content and terms of the insurance contract are not necessarily to be divined exclusively from the printed pages of the fleet policy and Scott's separate insurance certificate. Certain verbal representations made by persons in authority may become equally parts of the contract as, of course, in this state are the terms and provisions of any applicable statutes ...
>
> ... An insurance contract, like any other, does not become modified, supplemented or even interpreted by the statements or opinions of agents made unilaterally, only where those statements are supported by considerations or where they are relied upon by the insured to his detriment within the meaning and contemplation of Restatement (Second) of Contracts § 90....
>
> On the other hand, statements and representations made by Transport's agents before or contemporaneous with entering into the insurance contract may, if relied upon by Scott, become binding.... This rule applies to formally designated agents ... and, as well, to those having apparent authority to act for Transport. 513 So.2d at 894.

---

**2.** The Court states in *Andrew Jackson:* "When the soliciting agent, rather than the applicant, fills in the application, it is naive to assume that there is not a strong temptation on his part to ignore an answer the applicant gives which would prevent the company's issuing a policy, which would 'knock out' a sale. The insurance companies surely know this. Yet they permit their agents to be put in such conflict of interest positions, only to assert later, with a presumably straight face, that precisely what happened in this case should never occur." *Andrew Jackson,* 566 So.2d at 1192 (quoting *National Life & Accident Ins. Co. v. Miller,* 484 So.2d 329, 339 (Miss.1985) (concurring op.)).

These cases indicate that parole evidence can be used to prove misrepresentation and detrimental reliance.

■ Shelter next argues that the district court erred by failing to instruct the jury that the plaintiffs were bound by the agreement they signed. Shelter had proposed a jury instruction that stated:

> It is the law in Mississippi that an applicant for a policy of insurance who signs an application containing statements which are material to the risk to be undertaken, is under a duty to read the application and know the content of the information contained thereon.

Shelter cites as authority *Hoke v. National Life & Accident Insurance Co.*, 103 Miss. 269, 60 So. 218 (1912). In that case the question was whether a plaintiff had made a material misrepresentation on an application for insurance coverage. The Court held that when an applicant for insurance has given accurate information to an insurance agent and the agent has not recorded it properly, the fact that the applicant signs the application does not bar the applicant from attempting to prove that the answers contained on the application do not accurately reflect the information provided to the agent. *See Pongetti v. First Continental Life & Accident Co.*, 688 F.Supp. 245, 247 (N.D.Miss.1988). This situation is analogous to that in the instance, because the Nichols's claim is that Mrs. Nichols provided Holland with accurate information about her previous treatment for cancer.

In sum, applying Mississippi law to this case, all of Shelter's arguments must fail. Accordingly, the district court did not err in refusing to grant a directed verdict for Shelter on the grounds that the contract between Mr. Nichols and Shelter allowed Shelter to deny payment of medical bills incurred as a result of a pre-existing condition.

### B. Punitive Damages

1. The issue of punitive damages was properly submitted to the jury.

Shelter also maintains that the district court erred by failing to grant a partial directed verdict on punitive damages and emotional distress.[3] We disagree.

■ A decision by a trial judge whether to submit a punitive damages claim to the jury generally is dependent on the reasonableness of the insurer's denial of the underlying policy or contract claim. *See Standard Life Ins. Co. v. Veal*, 354 So.2d 239, 248 (Miss.1977); *Reserve Life Ins. Co. v. McGee*, 444 So.2d 803, 809 (Miss.1983). It is the trial judge's responsibility to determine whether there was an "arguably reasonable basis" for denying a claim. *Andrew Jackson*, 566 So.2d at 1184 (citing *Blue Cross & Blue Shield of Miss. Inc. v. Campbell*, 466 So.2d at 842 (Hawkins, J. denying petition for reh'g)).

"Arguably-based denials are generally defined as those which were rendered upon dealing with the disputed claim fairly and in good faith.... In these cases, the punitive damages issue *generally* should not be submitted to the jury." *Andrew Jackson*, 566 So.2d at 1184 and citations therein. An arguably-based defense does not mean that the insurer is entitled to a directed verdict on payment of a claim. *See Reserve Life Ins. Co.*, 444 So.2d at 809; *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So.2d at 843. Punitive damages are generally denied when an insurance company defends, rather than settles, a close case; when a company honestly contests the amount; or when a company contests cov-

---

**3.** Shelter argues, in part, that the punitive damages award against the company violates the Fourteenth Amendment in that it deprives Shelter of property without due process of law. The question whether an allegedly excessive punitive damages award is violative of due process rights is now before the United States Supreme Court. *See Pacific Mutual Life Ins. Co. v. Haslip*, 553 So.2d 537 (1990), *cert. granted,* — U.S. —, 110 S.Ct. 1780, 108 L.Ed.2d 782 (1990). Al-

though one member of the Supreme Court has made some disparaging remarks about Mississippi's punitive damages laws, *see Banker's Life & Casualty Co. v. Crenshaw*, 486 U.S. 71, 87, 108 S.Ct. 1645, 1655, 100 L.Ed.2d 62, 78 (1988), no court has ever found these laws unconstitutional on due process grounds, and we decline to do so without more direction from the United States Supreme Court or the Mississippi Supreme Court.

erage because the insured has failed to meet a policy condition. *Id.* at 810.

The Mississippi Supreme Court has held that "[t]he failure of the application to contain all of the information relayed by ... [the insured] to ... [the agents] does not constitute an arguable basis for denying the claim." *National Life & Accident Ins. Co. v. Miller,* 484 So.2d at 334. In *Independent Life & Accident Insurance Co. v. Peavy,* 528 So.2d at 1115, the Mississippi Supreme Court stated that misrepresentations by insurance agents which "lulled Peavy into believing that his benefits would remain available ... effectively manufactured the arguable reason which Independent Life would later use to deny Peavy's claim." The court refused to allow this and imposed punitive damages.

Furthermore, "absence or presence of an arguable basis is not *per se* determinative of whether the punitive-damages issue should be submitted to the jury." *Andrew Jackson,* 566 So.2d at 1185 and citations therein. Indeed, "Mississippi law has evolved to a point of recognition that submission of the punitive-damages issue *may* be submitted-notwithstanding the *presence* of an arguable basis." *Id.* at 1186 and citations therein.

The Mississippi Supreme Court in *Andrew Jackson* upheld the submission of the punitive damages issue to the jury on the basis of the "lying exception", an exception to the arguable basis rule which allows the punitive damages issue to be submitted to the jury when "the jury is asked to reject *on grounds of deliberate falsehood or fabrication [or misrepresentation]* the insurer's defense to the underlying contract claim." *Andrew Jackson,* 566 So.2d at 1183 (citing *Blue Cross & Blue Shield of Miss.,* 466 So.2d at 852 (Robertson, J., specially concurring) (emphasis in original)).

The Mississippi Supreme Court accepted Willie's argument that Andrew Jackson's denial of Willie's claim because of Jerlean's undisclosed heart condition should be rejected because "the agents: (1) misrepresented Jerlean's *disclosed* heart condition to Andrew Jackson, and (2) misrepresented policy provisions to Willie...." *Id.* at 1187

(emphasis in original). The court further stated that "Andrew Jackson *knew* (through Willie's pre-complaint information) or *constructively knew* (through imputation) or *should have known* (through diligent and thorough investigation) about its agents' misrepresentations...." *Id.* (emphasis in original). The court stated that even if Andrew Jackson was found to have denied Willie's claim on an arguable basis, "this case could be deemed an exception to the general rule that the punitive-damages issue should not be submitted to the jury under such circumstances.... Sufficient evidence existed for a judge to conclude that—notwithstanding the possibility or probability that the claim was denied on an arguable basis—Andrew Jackson and its agents' egregious mishandling of Willie's case and consequential breach of the implied covenant of good faith and fair dealing may have reached a heightened level of an independent tort." *Andrew Jackson,* 566 So.2d at 1187.

In striking similarity to the factual situation in *Andrew Jackson,* the jury, in the Nichols's case, found that the insurance agent made a fraudulent or grossly negligent misrepresentation to Mrs. Nichols in an attempt to induce her to purchase an insurance policy from Shelter. In response to a question from Mrs. Nichols, the insurance agent Randy Holland told her that her previous condition and treatment for leiomyosarcoma would not be considered pre-existing under the terms of a particular Shelter policy.

Shelter points out that the trial judge found as a matter of law that the Nichols's allegations of negligence against the insurance company should be dismissed. No jury issue was presented regarding the negligence of any Shelter home office personnel. In addition, the district court ruled that Shelter did have a legitimate and arguable basis for denying the Nichols's claim. Shelter asks why it should be punished when the evidence in the light most favorable to the Nichols is that Randy Holland intentionally disregarded his instructions and then lied to Shelter. These reasons, however, were held by the *Andrew Jack-*

*son* court to be sufficient to allow submission of the punitive damages issue to the jury. Thus, there was no need for a finding of bad faith on the part of Shelter. The "lying exception" allows Shelter's contract defense to the imposition of punitive damages to be rejected because of its agent's misrepresentations.

It is not necessary that an insurance company ratify the wrongful conduct of a sales agent or commit other wrongs to impose punitive damages upon it; the acts of a corporation's agents become the acts of the corporation. *See American Soc'y. of Mechanical Engineers*, 456 U.S. at 573, 102 S.Ct. at 1946. "An insurer may be held liable for actual and punitive damages based on its agent's actions." *Independent Life & Accident Ins. Co. v. Peavy*, 528 So.2d at 1115. *See also National Life & Accident Ins. Co. v. Miller*, 484 So.2d at 336.

Shelter's argument is that since the judge ruled that Shelter had an arguable basis for denying the claim, and since coverage was contested because the policy excluded coverage for pre-existing conditions, a punitive damages charge should never have been given to the jury. This argument ignores holdings by courts applying Mississippi law that wrongful actions by agents of an insurer cannot be used to create the arguable basis on which denial of the claim is based. Any doubt about the issue was dispelled in the recent case of *Andrew Jackson*, holding that punitive damages can be imposed under the "lying exception", among other reasons, even when the insurer has a defense on the contract.

2. The imposition of the punitive damages award and the amount of the award was reasonable.

As far as an award for punitive damages is concerned, "the law requires a finding of 'bad faith-*plus*'—based upon a preponderance of the evidence—before punitive damages may be awarded.... [T]his simply means that punitive damages may not be awarded 'in the absence of finding an independent tort separate from the breach of contract.' " *Andrew Jackson*, 566 So.2d at 1188. Punitive damages are designed to "(1) punish the wrongdoer for engaging in egregious conduct and (2) to deter the wrongdoer and others similarly situated from committing the same acts in the future." *Eichenseer v. Reserve Life Ins. Co.*, 682 F.Supp. 1355, 1363 (N.D.Miss. 1988).

The *Andrew Jackson* court found that the conduct of Andrew Jackson and its agents reached the heightened level of an independent tort where the record showed: "(1) *egregious breach* by both Andrew Jackson and its agents of the implied covenant of good faith and fair dealing; (2) attempted use of Willie's financial dire straits, lack of sophistication, and inferior bargaining position as a settlement leverage; (3) acts of fraud; and (4) general cavalier treatment of Willie." *Andrew Jackson*, 566 So.2d at 1190 (emphasis in original).

■ The reasons given by the *Andrew Jackson* court are not the only reasons that can justify a punitive damages award; nevertheless, we find these reasons to be applicable to Shelter. Like Andrew Jackson's agents, Shelter's agent Randy Holland was found by the jury to have made a fraudulent or grossly negligent misrepresentation to the insured, a person of low educational abilities, in response to her direct questions about her coverage. Mississippi law requires Shelter to accept responsibility for the acts of its agents. *See National Life & Accident Ins. Co. v. Miller*, 484 So.2d at 334–336.

We agree with Shelter that it is difficult for the company to know what action it can take to protect itself from the imposition of punitive damages in the future. It is not within this Court's power, however, to rewrite Mississippi punitive damages law. The Mississippi Supreme Court has remarked on the significance of this problem and suggested that the solution lies in altering the system of paying insurance agents on a commission basis; the current system provides an incentive to misrepresent policy terms or to ignore the insured's answers in order to make a sale. *See An-*

*drew Jackson,* 566 So.2d at 1192 (citing *National Life & Accident Ins. Co. v. Miller,* 484 So.2d at 339).

Mississippi law measures the amount of a punitive damage award by consideration of certain general factors:

First, the amount awarded should serve to punish the insurer and to deter it from committing similar offenses in the future. Second, the amount should serve as an example set to deter others from committing similar offenses. Third, the amount awarded should account for the insurer's pecuniary ability and financial worth. And fourth, the amount constitutes compensation for the plaintiff for his or her 'public service' in bringing the action.

*Andrew Jackson,* 566 So.2d at 1190 (citing *Mutual Life Ins. Co. of N.Y. v. Estate of Wesson,* 517 So.2d 521, 532 (Miss.1987) and numerous authorities therein).

In determining punitive damage awards, Mississippi juries may consider the emotional distress and even attorney's fees of the plaintiff. *See Blue Cross & Blue Shield of Miss., Inc. v. Campbell,* 466 So.2d at 485. Determination of the amount of punitive damages is a matter committed to the jury's discretion. *Andrew Jackson,* 566 So.2d at 1190. A jury verdict will not be disturbed simply because it seems "too high" or "too low". *Id.* at 1191 (citing *Bankers Life & Casualty Co. v. Crenshaw,* 483 So.2d 254, 278 (Miss.1985)).

The jury found that the plaintiff was entitled to recover punitive damages of $200,000.[4] In the light of other Mississippi cases that have awarded punitive damages, this amount does not seem unreasonable. *See Andrew Jackson,* 566 So.2d 1172 (Miss. 1990) (punitive damage award of $200,000 allowed to stand when award of compensatory damages was $28,000); *National Life & Accident Ins. Co. v. Miller,* 484 So.2d 329 (Miss.1985) (Mississippi Supreme Court affirmed a punitive damage award of $350,- 000 where the actual damage award was $2,500, when agents did not disclose on the insured's application all of the information given them by the insured and this knowledge was imputed to the insurance company); *Independent Life & Accident Ins. Co. v. Peavy,* 528 So.2d 1112 (Miss.1988) (Mississippi Supreme Court affirmed punitive damage award of $250,000 when the actual damage award was only $412.20, holding that the insurer's agents induced the insured to refrain from filing a timely claim.).

For the reasons stated above, we AFFIRM.

GEE, Circuit Judge, concurring in part and, in part, dissenting:

I concur in the Court's affirmance as to compensatory damages. As to the punitive damage award, however, I am unable to agree.

Shelter asserts a number of reasons why the jury's award of punitive damages must be overturned, among them that the evidence fails to support the award and that the unfettered discretion of the jury to impose punitive damages violates the due process clause.[1] The constitutional claim is presently pending before the Supreme Court; and to the definitive treatment which it will receive there I can, of course, add nothing. I am also persuaded, however, that under Mississippi law the evidence was insufficient to support submission of the punitive damage issue to the jury.

The Mississippi Supreme Court spells out the allegations necessary to sustain a punitive damage claim in *Andrew Jackson,* 566 So.2d 1172, 1182–92. The district court could not benefit from the discussion in *Andrew Jackson* because it is a recently issued opinion, but I find guidance in it as to Mississippi's law in today's case.

The trial judge must decide—in accord with the guidelines established by the Mississippi Supreme Court—whether a punitive damages issue should be submitted to

---

**4.** The jury also awarded Mr. Nichols $50,247.84 under the insurance contract and $75,000 for emotional distress and mental anxiety damages.

**1.** *See Pacific Mutual Life Ins. Co. v. Haslip,* 553 So.2d 537 (1990), ·cert. granted, —— U.S. ——, 110 S.Ct. 1780, 108 L.Ed.2d 782 (1990).

the jury. *Andrew Jackson,* 566 So.2d at 1182. The determination largely turns on whether the insurer denied the underlying policy or claim on a reasonable or arguable basis. *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803, 809 (Miss.1983); *Mutual Life Ins. Co. of N.Y. v. Estate of Wesson,* 517 So.2d 521, 528 (Miss.1987). If the trial judge is unable to find that the insurer acted in bad faith—that is, that the insurer failed to deal with the disputed claim fairly and in good faith—then according to the Mississippi Court the punitive damages issue "generally" should not be submitted to the jury. *See Andrew Jackson,* 566 So.2d at 1184; *Pioneer Life Ins. Co. of Ill. v. Moss,* 513 So.2d 927, 930 (Miss.1987).

In rare cases, however, a trial judge may submit the punitive damage issue to the jury if the evidence sharply conflicts as to whether the insurer had a legitimate and arguable defensive position. *Andrew Jackson,* 566 So.2d at 1185; *State Farm Fire & Cas. Co. v. Simpson,* 477 So.2d 242, 254 (Miss.1985). Here I conclude that the evidence does not show bad faith on the part of Shelter in denying the claim. Shelter timely investigated the disputed claims and paid the claims which arose after the period of contestability. Shelter chose to rely on the pre-existing condition clause to give the Nichols sufficient warning that their claim might not be honored. Shelter also chose to believe Mr. Holland—who never recanted his statement that he made no misrepresentations to the Nichols whatsoever. Given the swearing match between the Nichols and Mr. Holland, I would not regard Shelter's denial of the Nichols' claim as so patently unreasonable as to warrant punishment—to establish a precedent of such a finding could result in punitive damage awards as a matter of course whenever an insurance company denies a contested claim.

Mississippi law has evolved—some might say eroded—to the point of allowing the submission of a punitive damages issue to the jury even when the insurer undeniably had an arguable basis for denying a claim. *See Andrew Jackson,* 566 So.2d at 1186. Instances where such a submission can occur, however, are limited to cases in which

the insurer: (1) egregiously breaches its implied covenant of good faith and fair dealing; (2) attempts to use the insured's dire financial straits and inferior bargaining position as settlement leverage; (3) countenances acts of fraud; and (4) treats the insured in a generally cavalier manner. *Andrew Jackson,* 566 So.2d at 1190. I discern no evidence in the record that Shelter engaged in even one of these practices, save to the extent it relied on its agent's misrepresentations in denying the Nichols' claim. I do not consider Shelter's reliance to be a "contrived or specious defense," however, given the plain language of their pre-existing disease exclusion. *See Id.* at 1186. The record before us does not merit discarding the general rule and submitting the case to the jury on a less than bad faith standard. I therefore conclude that the jury verdict awarding punitive damages should be reversed. I therefore respectfully dissent from the Court's affirmance on this point.