**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-60096**

---

**LEWIS MOORE, United States of America**
**for the use of d/b/a Lewis Moore Painting,**

**Plaintiff-Appellant,**

**VERSUS**

**GIBBS CONSTRUCTION COMPANY, INC., ET AL.,**

**Defendants-Appellees.**

---

Appeal from the United States District Court
For the Southern District of Mississippi
(1:93-CV-491-RR)

---

February 23, 1996

Before GARWOOD, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Plaintiff Lewis Moore (Moore) appeals from final judgment entered *sua sponte* prior to trial on the basis of arguments presented in the parties' cross-motions to limit evidence. We vacate and remand to the district court for further proceedings.

---

[*] Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

## BACKGROUND

Defendant Gibbs Construction Company (Gibbs) contracted with the United States to repair and renovate the interior of the Tyler House apartments on Kessler Air Force Base in Biloxi, Mississippi. As required by law, Gibbs arranged for a bond as surety for payment of claims against Gibbs. The payment bond was issued by co-defendant Fidelity & Deposit Company of Maryland (Fidelity).[1] In November 1991, Gibbs subcontracted with Moore to paint and install wall coverings inside the Tyler House.

After Moore commenced performance, it became apparent that the existing surface on the interior doors and door frames in the Tyler House would not bond with the paint called for in Moore's subcontract with Gibbs. Moore delivered a sample of the door surface to the paint manufacturer and it was examined by a chemist, who specified an extensive surface preparation procedure for getting the paint to adhere. Moore then informed Gibbs in writing that the doors would require substantially more surface preparation than was contemplated by the subcontract. Accordingly, Moore requested a change order granting additional compensation for reworking the doors which Moore had already painted and for preparing the surface on the balance of the doors. Gibbs denied Moore's request for additional compensation, responding that the subcontract placed the burden of selecting and completing the proper surface preparation on Moore. Thereafter, Moore wrote

---

[1]  For purposes of this appeal Fidelity's interests are aligned with those of Gibbs. The defendants are referred to collectively as "Gibbs."

2

directly to the Air Force about the problem.  Following an investigation, the Air Force agreed with Gibbs.

As a result of the ongoing dispute, Gibbs withheld part of Moore's requested payment for September.[2]  In October 1992, Gibbs did not submit any pay request for Moore to the Air Force.  Gibbs claims that it never received Moore's October pay request, and that funds would have been withheld anyway because Moore's performance continued to be unsatisfactory.  Moore contends that the request was mailed to Gibbs according to his usual procedure.

On November 9, 1992, Moore walked off the job, leaving approximately half of the painting work incomplete.  Gibbs subsequently subcontracted with another painting contractor and was able to complete the painting work for less than the amount provided in Moore's subcontract, although the dispute with Moore did significantly delay Gibbs' departure from the job site.

### PROCEDURAL HISTORY

Moore filed this suit in October 1993.  Federal jurisdiction was based on the Miller Act, 40 U.S.C. § 270a et seq., which requires certain contractors in privity with the United States on federal construction projects to provide a payment bond for the protection of subcontractors that are not in privity with the United States.  Id. at § 270a.  The Act creates a statutory cause of action, in favor of the subcontractor, and against the surety bond, when the subcontractor is not paid on a timely basis for

---

[2]  The subcontract provided for Moore to receive progress payments for work completed each month.

labor and materials furnished to the federal project.  Id. at § 270b(a).

Moore also alleged claims, in the alternative, under Mississippi state law for (1) breach of contract, and (2) fraud and misrepresentation.  Moore's breach of contract claim was based on Gibbs' non-payment and Gibbs' failure to issue a change order after Moore encountered a job site that materially differed from that contemplated by the parties.  Moore's fraud and misrepresentation claims were based on allegations that project managers for both Gibbs and the Air Force represented to Moore prior to contracting that the surface preparation required would be minimal.  Moore sought recovery of the following damage elements: (1) $ 30,794.50 for labor and materials already supplied to the contract; (2) $ 6,858 for materials purchased by Moore for the contract; (3) $ 3,807 for extra-contractual work performed to remedy the surface adhesion problem; (4) $ 17,233.16 in attorney fees, on the basis of Gibbs' bad faith; (5) $ 15,983.52 in expectation damages, for profits lost due to Gibbs' alleged breach; (6) $ 50,000 in punitive damages; and (7) pre-judgment interest.

Gibbs answered that Moore committed the first breach by abandoning performance, and that Moore failed to mitigate his damages because he refused to sell materials purchased for the job to Gibbs.  Therefore, Gibbs claimed entitlement to an offset for more than the damages claimed by Moore.  Gibbs further answered that unambiguous subcontract language imposed upon Moore the obligation and expense of selecting an appropriate method of

4

surface selection, and that the contract specifications contemplated the extent of surface preparation required at the Tyler House.

Moore demanded a jury trial and the case was initially set for October 1994. In early October 1994, the parties signed a pretrial order and trial was reset for March 1995. The pretrial order was entered on October 18, 1994.

On October 14, 1994, the district court received Gibbs' motion to limit evidence and for leave of court. On November 4, Moore also moved to limit evidence and for leave of court. On December 20, the district court heard argument on the parties' cross-motions to limit evidence.

On January 13, 1995 the district court issued a lengthy order: (1) determining that Mississippi law applied; (2) excluding all of Moore's evidence; and (3) declining to recognize any offset recovery in favor of Gibbs. On January 18, 1995, after a hearing on Moore's request that the district court reconsider its January 13 ruling, the district court announced that it would enter final judgment in seven days unless the parties settled.

On February 27, 1995, the district court entered an order *sua sponte* "dismissing" the case. The February 27 order clarified that the district court had intended to deny all of Moore's claims in its January 13 order. The February 27 order further stated that the rights and liabilities of all parties had been fully adjudicated, and ordered entry of final judgment in accordance with

5

Federal Rule of Civil Procedure 58. Final judgment was entered March 1, 1995. Moore filed a timely notice of appeal.

On March 6, after final judgment was entered, the district court entered an order, *sua sponte* taking notice that the evidence excluded by its January 13 order was not part of the record. The March 6 order required the parties to submit copies of the excluded evidence by March 10, 1995.

Moore raises three main issues on appeal. First, Moore challenges the procedure employed by the district court, arguing that his case was thrown out of court without adequate notice and without a fair hearing. Second, Moore contends that the district court erroneously determined that the entire dispute was governed by Mississippi law because his Miller Act claims are governed by federal law standards that displace state law. Third, Moore contends that the findings made by the district court in the January 13 order are erroneous.

## MOORE'S PROCEDURAL CHALLENGES

The district court entered judgment *sua sponte*, and as a matter of law, before trial. There were no motions to dismiss or for summary judgment docketed in the case. Neither the district court's January 13 order nor the district court's February 27 order mention Federal Rule of Civil Procedure 12 or Federal Rule of Civil Procedure 56. Instead, the district court's disposition is based entirely upon its analysis of the parties' cross-motions to limit evidence. The February 27 order directing the entry of judgment simply clarified that the district court intended, by the January

6

13 order, to deny all of Moore's claims for relief because the rights and liabilities of the parties were adjudicated at that time.

Moore argues that the district court used improper standards to evaluate the admissibility of the parties' evidence and then improperly granted judgment as a matter of law without fair notice. Gibbs responds that the district court properly decided the cross-motions to limit evidence on the basis that parole evidence was not admissible to contradict the unambiguous terms of the subcontract. Gibbs further argues that once all of Moore's evidence was excluded, the district court was within its authority to enter summary judgment *sua sponte*, because there were no genuine issues of material fact for trial.

The district court's January 13 order does not evaluate the admissibility of the evidence in terms of traditional evidentiary principles. Instead, the district court purported to be deciding: (1) which party breached the contract; and (2) what money was owed to each party. As part of that determination, the district court decided key factual issues in favor of Gibbs, then concluded that Moore's evidence was not relevant because he was not entitled to prevail. In the context of conflicting evidence, the court made "findings" that: (1) the site condition did not differ from that contemplated by the contract; (2) the required surface preparation was contemplated by the contract; (3) the adhesion problem was not latent and could have been discovered by Moore at the time he bid the job; and, of utmost importance to the district court's

disposition, (4) that Moore never properly requested a change order.

At the conclusion of the lengthy order, the district court excluded Moore's evidence on virtually every issue, including: (a) whether Moore performed extra-contractual work; (b) whether the problem encountered by Moore required extra-contractual surface preparation; (c) Moore's claim for lost profits; (d) Moore's Miller Act claims for labor and materials; and (e) Moore's claim for attorney fees. The district court also reached the following legal conclusions: (1) that Gibbs' decision to withhold Moore's September progress payment was not a material breach of contract; (2) that Moore did not encounter a differing site condition; and (3) that Moore was not entitled to reimbursement for labor and materials under the Miller Act.

Gibbs argues that the district court properly excluded evidence extrinsic to the unambiguous terms of the written subcontract, apparently trying to invoke the parole evidence rule. Although the district court briefly mentions the unambiguous nature of the subcontract, most of the district court's exclusions are not supported by application of the parole evidence rule. For example, the district court excluded evidence relating to Moore's claim for lost profits because Moore "failed to properly document such claim." The district court also excluded evidence relating to Moore's Miller Act claims based on the legal and factual conclusion that Moore failed to mitigate his damages as required by Mississippi law.

8

Only the district court's exclusion of Moore's evidence relating to his claim for extra-contractual work, and his claim that the adhesion problem constituted a differing site condition are even potentially supported by the parole evidence rule. As to those claims, however, the district court still applied incorrect standards. First, the district court did not limit its consideration to contract terms. Instead it mentions evidence extrinsic to the contract, and reaches a result that excludes only evidence offered by Moore. Second, Mississippi's parole evidence rule provides only that parole evidence is not admissible to vary the terms of an unambiguous contract. MISSISSIPPI CODE § 75-2-202 (1981). The statutory rule does not operate to exclude evidence bearing on the parties' course of performance. Id. at § 75-2-202(a). Moore's evidence relating to whether he requested a written change order, and whether he was fully paid for work already completed under the subcontract, clearly falls into that category. Finally, the parole evidence rule does not exclude evidence relating to a parties claim of fraud or misrepresentation in the making of the contract. Nichols v. Shelter Life Ins. Co., 923 F.2d 1158, 1163 (5th Cir. 1991). Moore offered evidence to support his contention that both Gibbs and the Air Force had made specific pre-contract representations to him about the extent of surface preparation required by the subcontract. That evidence would not be excluded by the parole evidence rule.

Our Circuit has consistently required careful review when categories of evidence are excluded wholesale on the basis of

9

pretrial motions.  E.g., Kelly v. Petroleum Svcs., 61 F.3d 350, 357 (5th Cir. 1995) ("We agree with other circuits that an appellate court should carefully examine blanket pretrial evidentiary rulings."); Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1084 (5th Cir. 1986) (pretrial blanket exclusion of evidence caused artificial and unreasonable results).  The district court's order fails to articulate a cohesive theory to support the exclusion of virtually all of Moore's evidence.

Nor is the district court's disposition salvaged by a summary judgment analysis.  "District courts can enter summary judgment *sua sponte* so long as the losing party has ten days notice to come forward with all of its evidence."  Washington v. Resolution Trust Corp., 68 F.3d 935, 939 (5th Cir. 1995).  Given the circumstances of this case, however, the district court failed to afford proper notice.  Further, even if notice had been proper, there is no indication that the district court adhered to the rigid standards mandated by Federal Rule of Civil Procedure 56.

On January 18, 1995, the district court informed the parties that it intended to enter judgment, absent settlement, in seven days.  The court waited more than the required ten days before ordering the entry of judgment on February 27, 1995.  But summary judgment was actually decided on the basis of the January 13 order excluding all of Moore's evidence.  Therefore, Moore had no opportunity, either before or after that date, to supplement the record with knowledge that an adverse judgment would be the

10

consequence for failure to do so.  The district court failed to provide Moore with adequate notice.

Moreover, the district court's February 27 memorandum order is not framed in terms of Rule 56's requirement that there be no genuine issue of fact.  Instead, the order states that the parties' rights have been adjudicated.  Further, the February 27 order relies solely upon the January 13 order, which clearly decided several disputed issues of fact in Gibbs' favor.

The incomplete state of the appellate record compounds the difficulty of our inquiry and, we can only surmise, must also have affected the district court's disposition.  Many important documents were docketed late or not at all.  For example, Gibbs' motion to limit evidence was received by the district court on October 14, 1994, but not filed with the clerk's office until two months later, on December 21, 1994.  Moore's response to that motion, which is cited in the record and in the parties' briefs on appeal, is not docketed and does not actually appear in the record. In addition, the record and briefs on appeal indicate that both parties filed lengthy memoranda in support of their respective cross-motions to limit evidence.  Those documents are likewise not docketed and do not appear in the record.  It is thus impossible to tell what was before the district court at any given time.  Indeed, two days after judgment was entered, the district court entered another order, *sua sponte* taking notice of the fact that the evidence excluded by the January 13 order, and made the basis of final judgment in the February 27 order, was not part of the

11

record.  On the other hand, items that should never have been part of the record, a hand-edited excerpt from a rough-draft of an appellate brief for example, did make it into the record.

Taken together, the procedural anomalies identified by Moore and the incomplete state of the record require that the case be remanded for reconsideration in light of controlling evidentiary principles, and with reference to the standards articulated in the Federal Rules of Civil Procedure for granting judgment as a matter of law prior to trial.[3]

## APPLICABLE LAW

Moore also contends that the district court erroneously determined that the entire dispute was controlled by Mississippi law.  We agree.  Federal law controls Miller Act claims.  United States ex rel. General Elec. Supply, Inc. v. Wiring, Inc., 646 F.2d 1037, 1042 (5th Cir. 1981).  State law can be relied upon to fill the interstices only when there are no applicable federal standards.  E.g., United States ex rel. Lochridge-Priest, Inc., 950 F.2d 284, 287-88 (5th Cir. 1992).

The district court determined that all of Moore's substantive claims were governed by Mississippi law.  For example, the district court entered judgment on Moore's claim for attorney fees because there is "no legitimate basis in Mississippi law" for such an

---

[3]  Moore also argues that the cross-motions to limit evidence were untimely and barred by the pretrial order's joint stipulation that the evidence at issue was admissible.  The district court's disposition was improper regardless of whether the motions were properly before the court.  Therefore, we need not reach those issues.

award. The Supreme Court has expressly held that federal law controls the availability of attorney fees in Miller Act cases. F.D. Rich v. United States ex rel. Indus. Lumber Co., 94 S. Ct. 2157, 2164 (1974). Although the American Rule generally prohibits fee shifting, fees may be awarded to a prevailing party when the opponent acts in "bad faith, vexatiously, wantonly, or for oppressive reasons." Id. at 2165. The district court's application of Mississippi law to determine attorney's fees was in error. Similarly, the district court applied Mississippi law instead of federal law to determine whether Moore could recover for extra-contractual work performed to correct adhesion problems. Miller Act claimants have been allowed to recover in quantum meruit for work that benefits the prime contract, even when the work performed falls outside the claimant's subcontract. Hensel Phelps Constr. Co. v. United States ex rel. Reynolds Elec. and Eng'r Co., 413 F.2d 701 (10th Cir. 1969). On remand, the district court should take care to ensure that federal law is applied, where available, to Moore's Miller Act claims.

## CONCLUSION

The incomplete state of the record and the procedure employed by the district court make it impossible for us to provide a meaningful review of the district court's decision.

13

Accordingly, the judgment entered in favor of the defendants is VACATED and the case REMANDED to the district court for further proceedings consistent with this opinion.[4]

---

[4] This disposition makes it unnecessary for the Court to consider Moore's remaining argument that the district court's fact findings on the merits were clearly erroneous. We note, however, that there appear to be substantial fact questions concerning whether the adhesion problems encountered by Moore fall within the scope of the contract as written.